[Civ. No. 25931. Fourth Dist., Div. Two. Apr. 21, 1982.]

JAN PICK, Plaintiff and Appellant, v.
SANTA ANA-TUSTIN COMMUNITY HOSPITAL et al.,
Defendants and Respondents.

**COUNSEL**

Isaac & Marks and Godfrey Isaac for Plaintiff and Appellant.

Moore, Graves & Madory and Richard E. Madory for Defendants and Respondents.

**OPINION**

**KAUFMAN, J.**—Jan Pick, M.D. (petitioner) appeals from a judgment denying his petition for writ of mandate to compel his admission to the medical staff of Santa Ana-Tustin Community Hospital (hospital) and for damages. Petitioner's appellate contentions are that the findings of hospital's governing body are insufficient as a matter of law to support his exclusion from medical staff membership and that, in any event, the findings are not supported by substantial evidence. This is the second time this case has been before us.

Santa Ana-Tustin Community Hospital is a departmentalized acute general hospital approved by the Joint Commission on Accreditation of Hospitals.[1] It has adopted medical staff bylaws modeled after a 1971 publication of the Joint Commission entitled "Guidelines for Formulation of Medical Staff Bylaws, Rules and Regulations" (see *Miller* v. *Eisenhower Medical Center* (1980) 27 Cal.3d 614, 628, fn. 15 [166 Cal.Rptr. 826, 614 P.2d 258]).

In January 1975 petitioner applied for medical staff membership in hospital's department of psychiatry. He was thereafter advised by a letter setting forth the basis and reasons for the adverse recommendation that the credentials committee of the department of psychiatry had made a recommendation to the executive committee of the department of psychiatry that his application be denied. Petitioner then requested and was granted a hearing before an ad hoc committee of physicians made up from members of the medical staff.

The hearing before the ad hoc committee was held November 25, 1975. Petitioner represented himself, assisted by Drs. Yadusky and Purcell. The department of psychiatry was represented by Dr. Louise G. Sherk, secretary of the department of psychiatry. The recommendation of the ad hoc committee was to uphold the recommendation of the credentials committee that petitioner's application for medical staff privileges be denied.

The recommendation of the ad hoc committee was reported to the executive committee of the medical staff and on December 9, 1975, the executive committee accepted the recommendation of the ad hoc committee. Petitioner then requested and was granted an appellate review hearing before a committee of hospital's board of directors, hospital's governing body. The appellate review hearing was held on June 10, 1976. Petitioner was represented by counsel as was hospital. The report of the appellate review committee supported the recommendation of the department of psychiatry and the medical staff executive committee

---

[1] "The Joint Commission, which has its headquarters in Chicago, is sponsored by the American College of Surgeons, the American College of Physicians, the American Hospital Association, and the American Medical Association. It conducts a nationwide, voluntary survey and accreditation program for hospitals. From time to time it has published and revised operating criteria for hospitals seeking to acquire or retain accredited status. The federal Medicare Act recognizes the Joint Commission's accreditation and its standards as benchmarks. (See 42 U.S.C. § 1395x.)" (*Matchett* v. *Superior Court* (1974) 40 Cal.App.3d 623, 627, fn. 2 [115 Cal.Rptr. 317].)

that petitioner's application for medical staff membership be denied, and in August 1976 the board denied petitioner's application for medical staff privileges. Petitioner was so advised.

In June 1977, petitioner filed a petition for writ of mandate and damages in the Orange County Superior Court. An alternative writ issued and after trial, the court rendered judgment denying issuance of the peremptory writ, concluding that the administrative record contained substantial evidence to support the action of hospital's governing body in denying petitioner's application for medical staff privileges.

On appeal by petitioner to this court we reversed the judgment in an unpublished opinion concluding that meaningful judicial review of the administrative proceedings pursuant to Code of Civil Procedure section 1094.5 was impossible because no findings had been made by hospital's governing body or even by the ad hoc committee. (4 Civ. 19839, filed Feb. 27, 1979.) The appellate judgment read: "The order denying the petition for writ of mandate is reversed and the case is remanded to the trial court with instructions to issue a writ of mandate under section 1094.5 to require respondents to order a new hearing and to make appropriate findings."

Petitioner took no action in the trial court to have a writ of mandate issued pursuant to the appellate judgment. However, by a telephone call in October 1979, and a letter dated January 22, 1980, from petitioner's present counsel to hospital's counsel a new hearing was requested.

Hospital requested petitioner to submit a new application that would permit consideration of petitioner's professional experience and training occurring after the date of his initial application some five years earlier.[2] On the advice of counsel, however, petitioner declined to file a new application and took the position that his application for medical staff privileges should be granted or denied on the basis of his qualifications at the time he originally applied and that he was not required to submit evidence of events after the 1975-1976 hearings.

---

[2]At the subsequent ad hoc committee hearing there was testimony that it was suggested to counsel for petitioner that, five years having elapsed, if petitioner would file a new application, the likely result would be that the events up to 1975 would be discounted and that petitioner would be admitted to the staff on a six-month provisional basis, as was usual. Whether or not this was understood by petitioner or his counsel is not disclosed by the record. At both the ad hoc committee and the appellate review hearings petitioner's counsel stated that he had advised petitioner not to file a new application because he felt it would "dilute" or "jeopardize" petitioner's position.

After correspondence between counsel and two continuances necessitated by the failure of petitioner's counsel to arrange to have a stenographic reporter present, hearing before the reconstituted ad hoc committee[3] commenced on July 1, 1980, continued on July 29, and concluded on September 22, 1980. At the conclusion of its deliberations the ad hoc committee unanimously recommended that the original recommendation of the department of psychiatry to deny petitioner's application for medical staff privileges be upheld. The ad hoc committee found that petitioner's "manifested personality would create and present a real and substantial danger to the high quality of medical care both to his patients as well as other physicians' patients . . . if he were admitted as a staff member."[4]

Petitioner again requested an appellate review by the governing body, and an appellate review hearing was held on November 25, 1980. Additional evidence was received, minutes were prepared, and the appellate review committee recommended to the governing body that the recommendation of the ad hoc committee to deny staff membership to petitioner be upheld. The appellate review committee adopted and in-

---

[3]In hospital's brief it is asserted that the members of the reconstituted ad hoc committee were precisely the same as the original ad hoc committee. In his reply brief petitioner asserts that that is not true, but he does not support his assertion with any reference to the record or otherwise specify any difference in membership.

[4]The verbatim findings of the ad hoc committee read: "Dr. Pick's manifested personality would create and present a real and substantial danger to the high quality of medical care both to his patients as well as other physicians' patients. This Committee further finds that there is sufficient competent evidence in letters of evaluation and recommendation rendered to this Committee attesting to Dr. Pick's continuing personality conflicts with prior colleagues, supporting this Committee's determination that Dr. Pick's personality is such as would impair the high quality of medical care of the psychiatric unit at Santa Ana-Tustin Community Hospital if he were admitted as a staff member. In reference to Dr. Pick's witnesses presented in his own behalf, Dr. Gottschalk offered no evidence in support of Dr. Pick's behavior or medical practice since 1969. Though Chairman of the Department of Psychiatry at Orange County Medical Center, in which facility Dr. Pick served a residency, Dr. Gottschalk was unaware of any adverse relationships between Dr. Pick and the staff at other medical institutions where Dr. Pick previously practiced. Dr. Purcell does not practice psychiatry and, therefore, could make no competent statements concerning the ability of Dr. Pick to practice effectively as a member of the Department of Psychiatry at Santa Ana-Tustin Community Hospital. Hence, the unanimous conclusion of the Ad Hoc Committee was that neither witness presented by Dr. Pick offered competent or persuasive evidence in his behalf which would justify his admission to the Santa Ana-Tustin Community Hospital Psychiatric Staff. The Committee further observed that although it would have been to Dr. Pick's advantage to be diplomatic, charismatic, and persuasive before the Committee, he was judged to be hostile, abrasive and accusatory, demonstrating poor judgment. This contemporary behavior is fully consistent with Dr. Pick's behavior reported by evaluations previously presented to this Committee."

corporated by reference.the findings of the ad hoc committee (see fn. 4, *ante*).

The report of the appellate review committee was considered by the board of directors at its regular monthly meeting on December 15, 1980, and the recommendation of the appellate review committee that petitioner's application for medical staff privileges be denied was accepted. Petitioner was subsequently notified of the board's decision.

Pursuant to Code of Civil Procedure section 1094.5 petitioner then filed in the Orange County Superior Court a second petition for writ of mandate and damages. The matter was tried on April 30, 1981, following which the court rendered judgment denying issuance of a peremptory writ of mandate and the recovery of damages. The court made findings of fact and conclusions of law in which it determined the facts substantially as recited above and in addition found and concluded that findings of hospital's governing body and its decision denying petitioner's application for membership on the medical staff were supported by substantial evidence and that petitioner had not suffered financial or professional detriment or any recoverable damages as a result of the denial of his application for medical staff membership.

Although they are intermixed and frequently phrased in terms of the failure of hospital to accord fair procedure to petitioner, essentially two contentions are made on appeal: (1) that the findings made by the ad hoc committee and adopted by the appellate review committee and ultimately by the governing body are legally insufficient to support the denial of petitioner's application for admission to medical staff membership in the department of psychiatry; and (2) that even if they are legally sufficient, those findings are not supported by substantial evidence.

### Legal Sufficiency of the Findings

■ The contention that the findings are legally insufficient is supported by arguments that the essential findings are conclusory in nature and amount to nothing more than findings that petitioner has an abrasive personality and does not get along well with others. Petitioner is correct that standing alone the fact that an applicant for medical staff privileges has an abrasive personality or does not get along well with others is not a sufficient ground for his exclusion. (*Miller* v. *Eisenhower Medical Center, supra,* 27 Cal.3d at pp. 627, 632; *Rosner* v. *Eden*

*Township Hospital Dist.* (1962) .58 Cal.2d 592, 598-599 [25 Cal.Rptr. 551, 375 P.2d 431].) We do not agree with petitioner, however, that the findings made by the ad hoc committee and adopted by the appellate review committee and ultimately the governing body are tantamount to findings of no more than abrasive personality and inability to get along with others.

The essential finding is: "Dr. Pick's manifested personality would create and present a real and substantial danger to the high quality of medical care both to his patients as well as other physicians' patients. This Committee further finds that there is sufficient competent evidence in letters of evaluation and recommendation rendered to this Committee attesting to Dr. Pick's continuing personality conflicts with prior colleagues, supporting this Committee's determination that Dr. Pick's personality is such as would impair the high quality of medical care of the psychiatric unit at Santa Ana-Tustin Community Hospital if he were admitted as a staff member." Fairly read in light of the evidence alluded to (discussed *infra*) and the requisites for admission to medical staff membership set forth in the medical staff bylaws,[5] what was found was that petitioner's demonstrated lack of ability to work with others in the hospital setting is such as to present a real and substantial danger that patients treated by him might receive other than a high quality of medical care at the hospital if he were admitted to medical staff membership in the department of psychiatry.

That finding accords precisely with what is legally required. In *Miller* v. *Eisenhower Medical Center, supra*, 27 Cal.3d 614, the court pointed out the difference between a general inability to get along with others such as was involved in *Rosner* and inability to work with others in a hospital setting in a manner that will assure a high quality of medical care to hospital patients. (27 Cal.3d at p. 628.) The court stated: "What is required, in short, is that an applicant demonstrate that he has the ability to 'work with' others in the hospital environment in a

---

[5]Under article III, section 2 (qualifications for membership), hospital's medical staff bylaws state in part: "A. Only medical physicians ... who can document their background, experience, training and demonstrated competence, ... and *their ability to work with others with sufficient adequacy to assure* the Medical Staff and the Governing Body *that any patient treated by them in hospital will be given a high quality of medical care*, shall be qualified for membership on the Medical Staff. No medical physician ... shall be entitled to membership on the Medical Staff ... merely by virtue of the fact that he is duly licensed to practice medicine, ... or that he is a member of some professional organization, or that he had in the past, or presently has, such privileges at another hospital." (Italics added.)

manner which, in the words of the bylaw, will insure 'that any patient treated by [him] in the hospital will be given a high quality of medical care. . . .'" (*Id.*) Stated otherwise, rejection on the ground of an applicant's inability to work with others requires a finding "that an applicant's inability to 'work with others' in the hospital setting is such as to present a real and substantial danger that patients treated by him might receive other than a 'high quality of medical care' at the facility if he were admitted to membership." (*Id.*, at p. 629; see also *id.*, at p. 632.)

Nor do we find the essential finding so conclusory as to be legally insufficient; it is a finding of ultimate fact. (Cf. *Webster v. Board of Dental Examiners* (1941) 17 Cal.2d 534, 543-544 [110 P.2d 992].) It fully discloses the basis upon which petitioner's application was rejected and even refers to some of the specific evidence relied upon. A major purpose of requiring administrative tribunals to make findings is to permit meaningful judicial review. (See *Topanga Assn. for a Scenic Community v. County of Los Angeles* (1974) 11 Cal.3d 506, 514-516 [113 Cal.Rptr. 836, 522 P.2d 12]; *Hadley v. City of Ontario* (1974) 43 Cal.App.3d 121, 127 [117 Cal.Rptr. 513].) The findings here are sufficient to serve that purpose.

### Findings Supported by Substantial Evidence

We reject on both substantive and procedural grounds the contention that the findings are not supported by substantial evidence.

■ In terms of appellate practice the appellant's opening brief is grossly deficient. Citations to the record are sparse, and contrary to fundamental tenets of appellate practice (see *Aceves v. Regal Pale Brewing Co.* (1979) 24 Cal.3d 502, 507 [156 Cal.Rptr. 41, 595 P.2d 619]), the facts stated and the inferences drawn are those most favorable to the appellant rather than the respondent. No attempt is made at fairly stating all of the evidence as is required. (*Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881 [92 Cal.Rptr. 162, 479 P.2d 362]; *Strutt v. Ontario Sav. & Loan Assn.* (1972) 28 Cal.App.3d 866, 874 [105 Cal.Rptr. 395], and cases there cited.) On the contrary, those items of evidence thought to be most vulnerable to attack have been singled out as the items relied on by hospital and then attacked as "clearly incompetent," "unsubstantiated," "hearsay, speculation and undocumented" evidence "upon which no responsible person would rely."

For example, there was some testimony that six physicians on hospital's medical staff had stated to Dr. Sherk that they would resign from the staff if petitioner's application for staff privileges were granted. Petitioner then points out that this testimony was hearsay on hearsay and that no one could or would identify the six physicians or detail the circumstances under which such statements were allegedly made. He then asserts that this testimony was one of the most important if not the most important item of evidence upon which denial of his application was based. Not so. A reading of the transcript is persuasive that everyone involved, including the witness, realized the unreliable nature of this type of testimony and that it was not relied on by any of the several committees in recommending denial or by the governing body in denying petitioner's application. Notably, while other evidence was specifically referred to in the findings, no reference to that testimony is to be found. (See fn. 4, *ante.*)

Another example is petitioner's assertion that the ad hoc committee "seemed most concerned with Dr. Pick's manner and tone of voice during the course of the hearing itself," alluding to that part of the findings in which it was stated that during the hearing petitioner was observed to be "hostile, abrasive and accusatory, demonstrating poor judgment." (See fn. 4, *ante.*) It is quite apparent from the findings that the committee was not at all "most concerned" with petitioner's manner and tone of voice during the hearing but, rather, considered his demeanor at the hearing corroborative of the other information presented concerning his inability to work with others in a hospital setting. The final sentence of the findings reads: "This contemporary behavior is fully consistent with Dr. Pick's behavior reported by evaluations previously presented to this Committee."

Given this type of presentation in appellant's opening brief, the contention that the findings are not supported by substantial evidence may be deemed waived. (*Foreman & Clark Corp.* v. *Fallon, supra,* 3 Cal.3d at p. 881; *Strutt* v. *Ontario Sav. & Loan Assn., supra,* 28 Cal.App.3d at p. 874, and cases there cited.)

■■ ■■■ Alternatively, we have read in full the reporter's and clerk's transcripts including the exhibits in the latter and have concluded, as did the trial court, that the administrative findings are supported by substantial evidence and that petitioner failed to meet his burden of demonstrating his ability to work with others with sufficient

adequacy to assure that patients treated by him in the hospital would receive a high quality of medical care (see fn. 5, *ante*).[6]

It is of course true that in hearings concerning the qualifications of an applicant for admission to medical staff privileges a hospital should receive as evidence and consider only the kind of relevant matter upon which responsible persons customarily rely in the conduct of serious affairs. Hospital's medical staff bylaws so provide, and hospital does not contend to the contrary. We agree with petitioner that the testimony that six unidentified physicians had stated to Dr. Sherk that they would resign from the medical staff if petitioner's application were granted was not the kind of matter upon which responsible persons customarily rely in the conduct of serious affairs. However, we have already laid that ghost. There was a good deal of other evidence that, although it was hearsay, was of the type upon which responsible persons customarily rely in the conduct of serious affairs.

After petitioner applied for medical staff membership, hospital made an effort to obtain reliable information about him. Its representatives communicated with the various institutions with which petitioner had been associated, requesting information about petitioner. The replies disclosed that almost invariably petitioner had had difficulty in his dealings with his colleagues and the staff of the institutions with which he had been associated. A letter dated April 1, 1969, from Dr. Michael Perley, acting director of medical education at St. Mary's Long Beach Hospital, stated that petitioner completed five months of internship at St. Mary's on June 30, 1962, with an average rating but that "[h]e did have some difficulty in his interpersonal relationships particularly in his response to criticism, ability to work with others, and leadership." In a letter dated January 30, 1970, signed by Dr. Paul Rubenstein, director

---

[6]Citing *Lewin v. St. Joseph Hospital of Orange* (1978) 82 Cal.App.3d 368 [146 Cal.Rptr. 892], petitioner asserts that the proper scope of review is a determination of whether hospital's decision was arbitrary, capricious or entirely lacking in evidentiary support, contrary to public policy, unlawful or procedurally unfair—all questions of law. As pointed out in *Lewin* that is the proper scope of review in respect to quasi-legislative or rule-making determinations of the governing body of a hospital (*id.*, at pp. 383, 386-387) but on review of a quasi-judicial determination of the governing body of a private hospital the appropriate scope of review is a determination of whether or not the administrative findings are supported by substantial evidence. (Code Civ. Proc., § 1094.5, subd. (d).) The function of the trial and appellate court is the same in respect to such review, and the question of whether or not the findings are supported by substantial evidence is a question of law. (See *Lewin v. St. Joseph Hospital of Orange, supra,* 82 Cal.App.3d at p. 386.) Thus petitioner's erroneous characterization of the proper scope of review is of no consequence in this case.

of professional services at Cedars-Sinai Medical Center, where petitioner served an internship from July 1, 1961 to January 31, 1962, it was stated: "During this period Dr. Pick, who was much older than his peers, developed many personality clashes with his colleagues and attending physicians. He felt that maybe the demands of our program and the size of our institution were important factors in his personal performance and asked if he could complete his internship elsewhere. We agreed and supported his move." In a letter from Agnews State Hospital, dated June 10, 1969, signed by Dr. J. Elizabeth Jeffress, chief of professional education, it was stated: "Dr. Jan Pick was a resident here from July 1966 to June 1968. He performed satisfactorily as a resident but had some personality problems which interfered with his relationship with staff and colleagues. By mutual agreement he transferred to another program for his third year of training." In an evaluation dated October 27, 1969, by the chief of staff at Brea Hospital petitioner was rated "Below Average" with respect to the factors of emotional stability and professional relations with patients. In an evaluation dated April 28, 1975, by the chief of staff at Hoag Memorial Hospital, petitioner was rated "Below Average" in respect to emotional stability and control and professional relations with patients.

Immediately before he applied for medical staff membership at Santa Ana-Tustin Community Hospital in 1975, petitioner had been a member of the medical staff at Hoag Memorial Hospital Presbyterian in Newport Beach. Pending an investigatory hearing into petitioner's difficulties with other members of the staff and with the anesthesiology department, petitioner resigned. He admitted during the hearing before the ad hoc committee that he resigned when it became apparent that his removal from the staff was imminent.

Dr. Sherk who was also a member of the staff at Hoag and had had some professional dealings with petitioner testified at the November 25, 1975 hearing before the original ad hoc committee in substance as follows: "Dr. Pick allowed himself to become involved in an altercation with an anesthesiologist that led to a summary suspension from the staff. Because of a question of due process, Dr. Pick was reinstated until an Ad Hoc Committee could investigate this matter. It was recommended by the Ad Hoc Committee that Dr. Pick be removed from the Medical Staff because of specific problems relating to personality clashes with colleagues and attending physicians and continued difficulty with interpersonal relationships and inability to work with others. It was felt Dr. Pick consistently interfered and hampered employees and

staff and colleagues from delivering effective medical care to patients. The incident with the anesthesiologist at Hoag Memorial Hospital was the culmination in a series of problems that Dr. Pick manifested in his interpersonal relationships with staff during his membership. Dr. Pick chose to resign when it became apparent that his removal from the staff was imminent."[7]

Petitioner's version of his troubles at Hoag Memorial was that he was required to use the services of an anesthesiologist who in fact was completely untrained and incompetent and who showed up with the smell of liquor on his breath sometimes and sometimes did not show up at all. He complained about this and eventually made an entry concerning the matter on a chart after which "all hell broke loose." Thereafter, various anesthesiologists failed to show up as scheduled and he also had disputes with his colleagues who he stated were "jealous" of him.

By a letter dated October 29, 1979, signed by Dr. Lawrence M. Greene, chairman of the credentials committee of the department of psychiatry, addressed to the administrator of Hoag Memorial Hospital, hospital attempted to obtain a copy of the transcript of the proceedings at Hoag Memorial involving petitioner, but Hoag Memorial declined to furnish a transcript stating only that petitioner was a member of the medical staff from November 1969 until June 1975 "at which time he voluntarily resigned from the staff." While petitioner testified that he did not request that the record be sealed at Hoag Memorial, it is a fair inference that he was unwilling to waive any privilege that might be involved.

Hospital asserts that petitioner's disruptive conduct and inability to work with the anesthesiology department and his fellows at Hoag would have to have been extremely severe to warrant his removal from the medical staff. Petitioner characterizes that assertion as "pure unwarranted speculation," stating: "It is more rational to conclude that the conduct of the anesthesiologists was outrageous ... and that Dr. Pick

---

[7]The foregoing quotation is taken (with corrections in spelling as to several words) from a summary prepared by Dr. Sherk which was introduced into evidence at the ad hoc committee hearing on July 1, 1980. Although Dr. Sherk personally testified at the November 25, 1975, ad hoc committee hearing, she refused to attend and testify at the hearing on July 1, 1980, allegedly because at the conclusion of the 1975 hearing petitioner had threatened "to get [her] for this." Apparently all parties treated the evidence received at the original hearing as being in evidence in the second hearing also, and hospital requested the court below to take judicial notice of the record in the first mandate proceeding which it apparently did without objection.

resigned to take his patients out of an environment where not only was their care repeatedly jeopardized by unresponsive and uncaring support staff, but where Dr. Pick was criticized for speaking out strongly against such unprofessional and health endangering practices."

We do not agree. It was entirely reasonable for hospital to conclude that a physician would not face imminent removal from the medical staff in the absence of serious unwarranted disruptive conduct. Petitioner as an applicant for admission to medical staff membership had the burden of establishing his ability to work with others in a hospital setting in a manner that would assure that high quality medical care would be furnished patients at the hospital. If petitioner wanted to establish the propriety of his actions at Hoag Memorial Hospital, he surely had it within his power to present a transcript of the proceedings there or other persuasive evidence aside from his own self-serving testimony. He had not previously been a member of the medical staff of Santa Ana-Tustin Community Hospital, so hospital could not be expected to have first-hand information about him. Hospital does not have subpoena power. It is altogether appropriate, therefore, that the medical staff bylaws placed the burden of establishing his qualifications for admission to medical staff membership upon him. (Cf. *Anton v. San Antonio Community Hosp.* (1977) 19 Cal.3d 802, 828, and fn. 27 [140 Cal.Rptr. 442, 567 P.2d 1162].)

Petitioner's chief argument in support of his contention that the findings are unsupported by substantial evidence is that no nexus was shown between his manifest inability to work with others and the potential for patient care of less than high quality. (See *Miller v. Eisenhower Medical Center, supra*, 27 Cal.3d at p. 632.) He asserts that there was no evidence that his inability to work with others at the various institutions where he had served affected patient care. We do not know that a showing of actual interference with patient care was required (see *Miller v. Eisenhower Medical Center, supra*[8]), but, in any event, petitioner is mistaken.

---

[8]The court there stated: "[T]here may well be circumstances in which a doctor's limited ability to 'work with' other hospital personnel, although it results in no demonstrable conflict in the joint care of individual patients, might nevertheless be shown to have a clear adverse effect on the overall 'quality of medical care' offered by the facility—and therefore on the quality of care to be offered the applicant's patients as well. On the other hand, we do not believe that that nexus may be presumed. The fact that a physician seeking admission to staff membership is shown to manifest characteristics of personality which other staff members or administrators find personally disagreeable or annoying is not in itself enough, in our view, to justify rejection under the subject by-

Petitioner's own testimony about his problems at Hoag Memorial Hospital establish that the quality of care afforded his patients was affected by his inability to work with members of the anesthesiology department. Petitioner testified that as a result of the conflict between him and members of the anesthesiology department, anesthesiologists frequently failed to show up as scheduled and he was required to make excuses and lie to his patients because their treatment could not be given as and when scheduled. Ultimately, as a result of his problems at Hoag Memorial, he felt the quality of care being afforded his patients was so poor that he removed 15 of them for treatment at a different hospital.

The several committees and hospital's governing body were amply justified in concluding that petitioner's inability to work with others in a hospital setting posed a real and substantial danger that less than high quality medical care would be afforded his patients and the patients of other admitting physicians at the hospital.

Finally, but of equal significance, petitioner failed in another important respect to meet his burden of establishing his qualifications. He refused to present any evidence bearing on his qualifications with respect to a period of more than three years immediately preceding the hearing before the reconstituted ad hoc committee. Petitioner was invited to file a new application and was requested to furnish information concerning his professional activities after the date of the hearings in 1975 and 1976. (See fn. 2, *ante.*) On the advice of counsel he not only declined to file a new application but he refused to supply important and highly pertinent information concerning his professional activities after 1977. He did inform the several committees that he was no longer in private practice and was working on a part-time basis at Rio Hondo Hospital in Norwalk as an employee of the County of Los Angeles. However, at the continued hearing before the ad hoc committee on July

---

law provision. An otherwise competent physician, although considered 'controversial,' outspoken, abrasive, hypercritical, or otherwise personally offensive by some of his hospital colleagues, may nevertheless have the ability to function as a valuable member of the hospital community and should not be denied the opportunity to do so as a result of personal animosities or resentments alone. To permit such application of the bylaw in question would, in the words of *Rosner*, pose a substantial danger of application 'as a subterfuge where considerations having no relevance to fitness are present.' Rejection on this basis can be permitted, therefore, only when it can be shown that the applicant's ability to work with others in the hospital setting is limited in a manner which would pose a realistic and specific threat to the quality of medical care to be afforded patients at the institution."

29, 1980, when petitioner was asked, "Have you resigned from any other medical staffs beside Hoag Memorial," he restricted his answer to the period before 1977. He responded: "I have not resigned—well, yes. I did resign from—but that was after 1977. Before '77, I think the only hospital I resigned from is Hoag." When he was asked, "Have you lost your privileges at any other hospital," he responded, "Is that up til [*sic*] '77, you're asking?" The questioner responded, "Yes," and petitioner then answered: "No, I have not." Petitioner was then asked: "Have you lost privileges at any hospital since 1977," whereupon petitioner's attorney objected that that information was not relevant to the matter before the committee and instructed petitioner not to answer. Thereafter petitioner was asked, "[h]ave you had any privileges reduced at any hospital?" He responded: "I had no privileges reduced at any hospital. I'm talking up to 1977. My attorney has instructed me not to discuss anything after that."

Patently, the information requested should have been supplied. Apparently petitioner's attorney felt that, the appellate judgment in the earlier appeal entitled petitioner to proceed on the evidence previously adduced or at least on evidence relating only to petitioner's qualifications at the time he first applied for medical staff membership. If so, he was mistaken. The appellate judgment directed the superior court to issue a writ of mandate to hospital requiring "a new hearing and to make appropriate findings." There was nothing in the judgment limiting the hearing to the evidence previously adduced. If that had been intended the judgment would merely have required that appropriate findings be made. Neither is it reasonable to suppose that in ordering a new hearing it was intended that evidence be limited to events reflecting on petitioner's qualifications at the time he first applied for medical staff privileges some five years earlier. As indicated by several members of the several committees, by refusing to answer questions pertaining to events in the three years immediately preceding the new hearing, petitioner was asking the hearing committees to work and make their recommendations in the dark.

We conclude that the findings of the ad hoc committee adopted by the appellate review committee and ultimately by the governing body are supported by substantial evidence and that petitioner failed to demonstrate his ability to work with others in such a manner as to assure high quality medical care to patients at the hospital. Petitioner is not foreclosed, even at this late date, of course, from making a new applica-

tion for medical staff privileges if that is his desire and making a proper showing that he meets the qualifications for medical staff membership.

The judgment is affirmed.

Morris, Acting P. J., and McDaniel, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied June 30, 1982.