[Civ. No. 33376. Fourth Dist., Div. Two. May 10, 1985.]

DENISE WICKHAM et al., Plaintiffs and Appellants, v.
SOUTHLAND CORPORATION, Defendant and Respondent.

**COUNSEL**

Michael J. Piuze for Plaintiffs and Appellants.

Wilson, Borror, Dunn & Scott and Caywood J. Borror for Defendant and Respondent.

**OPINION**

**KAUFMAN, J.**—The plaintiffs, Denise Wickham, Tyrone Crosby and Leslie and Ruby Johnson, sued Southland Corporation[1] (defendant or Southland), asserting it was liable in damages for the personal injuries of plaintiffs Wickham and Crosby and the death of Cedrick Johnson, the son of plaintiffs

---

[1] The name Southland Corporation is not found among the named defendants. However, "7-Eleven STORE" was named as a defendant, and Southland Corporation dba 7-Eleven FOOD STORES answered the complaint reciting that it had been erroneously sued and served as "7-Eleven STORE."

Leslie and Ruby Johnson, which personal injuries and death were allegedly caused by the sale of alcoholic beverages to Jesse Lewis Cope, an intoxicated minor, by the 7-Eleven franchise operator, Valleree Campbell, who was alleged to be the agent of Southland Corporation. Following trial to a jury a special verdict was returned finding that the franchise operator was not the agent of Southland Corporation in selling the alcoholic beverages to Cope. Based on the special verdict, judgment was entered in favor of Southland.

Plaintiffs appeal, contending that the franchise operator was an agent of Southland as a matter of law; that the trial court prejudicially erred in declining to deliver a jury instruction proposed by plaintiffs based on the franchisor's right to exercise "substantial" control and instead delivering BAJI Instruction No. 13.20 referring to the right to "complete" control; and that the court prejudicially erred in failing to render an instruction proposed by plaintiffs that the franchisor as a colicensee on the liquor license had a nondelegable duty to plaintiffs to prevent the sale of intoxicating liquor to an intoxicated minor.[2] We conclude plaintiffs' contentions are not meritorious and affirm the judgment.

At the outset, it is necessary to state only a few of the basic facts. Other pertinent facts will be included in the discussion of the several issues.

The business carried on at the 7-Eleven Store on Arrow and Palmetto in Fontana was owned and operated by Valleree Campbell pursuant to a franchise agreement with the Southland Corporation. Ms. Campbell had purchased the business from its previous owner, Walter Boyd. Ms. Campbell's franchise was designated by identifying number 13974.

The franchise agreement provided for a percentage fee which was based upon "Gross Profit" which, in turn, was based on receipts from sales less cost of goods sold. The first $5,000 per month, or $60,000 per year, over the cost of goods sold was to go to the franchisee, out of which operating costs were to be defrayed.

For the franchise fee, the franchisee received: lease of a building and premises; lease of described equipment; license to use the 7-Eleven trade-

---

[2]After filing their notice of appeal, plaintiffs elected to proceed via rule 4(b), of the California Rules of Court, and stated four points to be raised. Southland Corporation urges the plaintiffs' first and third contentions were not properly designated as required by rule 4(b) and that, therefore, plaintiffs should be precluded from advancing these grounds for reversal. It is of course true that in a rule 4(b) appeal issues not embraced within the points stated are not subject to review absent a successful motion to proceed on other points. (See, e.g., *McDaniel* v. *Dowell* (1962) 210 Cal.App.2d 26, 30 [26 Cal.Rptr. 140].) However, after reviewing plaintiffs' designated points for review, we conclude that the contentions on appeal are embraced therein.

mark; license to use copyrighted and trade secret Systems Manual; merchandising assistance, including group buying and recommendations and advice regarding product selection, display and advertising and bookkeeping services, including payroll preparation, business tax reports and returns and inventory controls and audit.

Shortly after purchasing the business and executing the franchise agreement with Southland, Ms. Campbell applied for an "off sale" beer and wine license and paid the fee therefor. The license was issued to:

"CAMPBELL VALLEREE E

"SOUTHLAND #13974."

The application for the license was also executed by Southland as an "APPLICANT," and the previous owner, Mr. Boyd, executed the application as "TRANSFEROR."

On September 9, 1978, Jesse Lewis Cope, having apparently earlier purchased some liquor from Sierra Liquor Stores, purchased beer at the 7-Eleven Store on Arrow and Palmetto and drank same. Soon thereafter Cope drove a vehicle which collided with an automobile occupied by plaintiffs Wickham and Crosby and the decedent Cedrick Johnson. Plaintiffs Wickham and Crosby suffered serious personal injuries and Cedrick Johnson was killed.

Plaintiffs instituted this action against Jesse Lewis Cope, Sierra Liquor Stores, Southland dba 7-Eleven Food Stores (see fn. 1, *ante*), and Does 1 through 20. By amendment to the pleadings Valleree Campbell was named as a defendant, but plaintiffs did not serve her. Before trial plaintiffs entered into settlements with the other named defendants and dismissed them from the action, so the matter proceeded to trial only as between plaintiffs and Southland. In the pleadings and at all times during the trial until the jury was to be instructed, the only disclosed theory for liability on the part of Southland was that in selling alcoholic beverages to Jesse Lewis Cope, Valleree Campbell and her employees were the agents of Southland acting within the course and scope of their agency.

As already stated, the jury returned a special verdict finding there was no such agency relationship.

### Agency as a Matter of Law

Plaintiffs contend the evidence establishes as a matter of law that the franchise operator, Valleree Campbell and her employees, were the agents

of Southland in selling alcoholic beverages to Jesse Lewis Cope. The contention is unmeritorious for at least two reasons: first, plaintiffs' presentation of the issue is so fundamentally deficient it is not entitled to consideration; and secondly, it is substantively incorrect.

A contention that the evidence establishes a particular fact as a matter of law when the fact finder has determined the fact to the contrary is but another way of asserting that the evidence is insufficient to support the determination of the fact finder. Plaintiffs' presentation is entirely inadequate to properly raise that issue. As this court stated in *Pick* v. *Santa Ana-Tustin Community Hospital* (1982) 130 Cal.App.3d 970, 978 [182 Cal.Rptr. 85]: "In terms of appellate practice the appellant's opening brief is grossly deficient. Citations to the record are sparse, and contrary to fundamental tenets of appellate practice (see *Aceves* v. *Regal Pale Brewing Co.* (1979) 24 Cal.3d 502, 507 [156 Cal.Rptr. 41, 595 P.2d 619]), the facts stated and the inferences drawn are those most favorable to the appellant rather than the respondent. No attempt is made at fairly stating all of the evidence as is required. (*Foreman & Clark Corp.* v. *Fallon* (1971) 3 Cal.3d 875, 881 [92 Cal.Rptr. 162, 479 P.2d 362]; *Strutt* v. *Ontario Sav. & Loan Assn.* (1972) 28 Cal.App.3d 866, 874 [105 Cal.Rptr. 395], and cases there cited.)"

Here, plaintiffs refer only to the evidence supporting their contention that Southland as the franchisor had the right to control the business operations of the franchisee. They fail utterly even to mention the evidence tending to support the jury's special finding, for example: only Ms. Campbell and people employed by her sold beer and wine; Ms. Campbell hired and fired all employees, set their wages, paid them and gave them their day-to-day instructions; Ms. Campbell in fact controlled the manner in which the day-to-day operations of the store were conducted; and the franchise agreement specifically provided that the relationship between Southland and Ms. Campbell was that of independent contractor, not principal and agent, that employees would be the employees or agents of Ms. Campbell, that Ms. Campbell would have the sole right to employ and discharge such employees as in her judgment might be necessary, and that Ms. Campbell, her agents, representatives and employees should under no circumstances be considered or held out to be agents, representatives, servants or employees of Southland.

Given this type of presentation the contention that the finding made in the trial court is not supported by substantial evidence may be deemed waived. (*Foreman & Clark Corp.* v. *Fallon* (1971) 3 Cal.3d 875, 881 [92 Cal.Rptr. 162, 479 P.2d 362]; *Pick* v. *Santa Ana-Tustin Community Hos-

*pital, supra,* 130 Cal.App.3d 970, 979; *Strutt* v. *Ontario Sav. & Loan Assn.* (1972) 28 Cal.App.3d 866, 874 [105 Cal.Rptr. 395].)

■ On the merits: "[I]t is an elementary rule that the existence of agency is a factual question within the province of the trier of fact whose determination may not be disturbed on appeal if supported by substantial evidence (*Thayer* v. *Pacific Elec. Ry. Co.* (1961) 55 Cal.2d 430, 438 [11 Cal.Rptr. 560, 360 P.2d 56]; *Brokaw* v. *Black-Foxe Military Institute* (1951) 37 Cal.2d 274, 278 [231 P.2d 816])." (*Anthony* v. *Enzler* (1976) 61 Cal.App.3d 872, 877 [132 Cal.Rptr. 533].) Only when the essential facts are not in conflict will an agency determination be made as a matter of law. (See *Troost* v. *Estate of DeBoer* (1984) 155 Cal.App.3d 289, 299 [202 Cal.Rptr. 47].) These principles are fully applicable to cases in which it is asserted that a franchisee is the agent of the franchisor. (See *Kuchta* v. *Allied Builders Corp.* (1971) 21 Cal.App.3d 541, 547 [98 Cal.Rptr. 588]; *Nichols* v. *Arthur Murray, Inc.* (1967) 248 Cal.App.2d 610, 614 [56 Cal.Rptr. 728].)

As Division One of this court stated in the leading case of *Nichols* v. *Arthur Murray, Inc., supra,* 248 Cal.App.2d 610, 614: "The issue of agency in this case was one of fact. [Citations.] The potential and practical effect of the controls provided by the franchise agreement upon the right of defendant to control the overall operation of the contemplated enterprise, and the purpose of the parties in providing these controls were questions of fact incident to the primary issue whether the right to control thus conferred created an agency relationship between the parties."

The evidence in the case at bench gave rise to conflicting inferences and clearly presented a question of fact. Having been determined as a question of fact on evidence giving rise to conflicting inferences, the determination of the fact finder is supported by substantial evidence and will not be overturned. It is useless, as plaintiffs do, to recount the evidence that would have supported a contrary finding had a contrary determination been made by the trier of fact.

About the only point made in connection with this contention that deserves any significant consideration is the claim that Southland's status as a colicensee on the "off sale" beer and wine license establishes a principal-agency relationship as a matter of law. This contention is related to plaintiffs' nondelegable duty contention discussed *infra,* and our observations here are germane also to our later discussion of that issue.

■ In the final analysis, even if plaintiffs were correct that Southland is a colicensee, we do not agree that that fact alone would establish a principal-

agency relationship as a matter of law. In our view, that fact, if it were a fact, would have been one, perhaps a significant one, to be considered by the fact finder along with all the other facts and circumstances in its determination of the extent of Southland's right to control and, thus, the relationship between the parties with respect to the sale of alcoholic beverages to underaged and/or intoxicated customers. As stated in *Nichols* v. *Arthur Murray, Inc., supra,* 248 Cal.App.2d 610, 612: "Whether the relationship between parties to a written agreement is that of principal and agent, at least insofar as this relationship affects a stranger to the agreement as in the case at bench, is dependent upon the intention of the parties determined from the writing and the accompanying circumstances. [Citations.]"

■ In any event, however, plaintiffs' whole argument assumes that the record establishes as a matter of law that Southland is a colicensee under the "off sale" beer and wine license. We do not believe that is established by the record. It is true that Southland Corporation, Inc. executed the application for transfer of the license as an "APPLICANT." Its doing so, however, was required by the application form promulgated by the Department of Alcoholic Beverage Control. The application form requires the applicant to state under penalty of perjury "that no person other than the applicant or applicants has any direct or indirect interest in the applicant's or applicants' business to be conducted under the license(s) for which this application is made." Because Southland's franchise fee is based on gross sales after certain deductions, Southland would be deemed by the department to have either a direct or indirect interest in the sale of alcoholic beverages under the license. Thus, Southland's execution of the application as an "APPLICANT" was, at least in part, a required disclosure to the department of Southland's interest in the proceeds of alcoholic beverage sales made under the license.[3]

---

[3]The only other evidence of the reason for Southland's signing the application is found in the testimony of Donald W. Tucker, a Southland employee who testified under examination by plaintiff's counsel as follows:

"Q. Why is Southland's name on the liquor license?

"A. I can't tell you why. I only know that it is. I know what it does for us.

"Q. What does it do for you?

"A. In the case of a franchisee leaving their store, terminating of their own free will, which they have a right to do, it facilitates ease of transfer of the license to Southland.

"Q. That's a benefit—that's of benefit to Southland?

"A. Or to the next franchisee.

"Q. Sure. That way you can continue to sell alcohol uninterrupted after your independent contractor leaves and before the next one arrives; right?

"A. Yes."

The last-quoted question called for a legal opinion and although Mr. Tucker answered it, the answer was in all probability incorrect if the question referred to the right to continue selling alcoholic beverages without a transfer of the license. (See discussion in the text, *infra.*)

The name in which the license was issued falls far short of establishing that Southland is a colicensee. The license was issued to:

"CAMPBELL VALLEREE E

"SOUTHLAND #13974." The designation "SOUTHLAND #13974" would appear to be simply an identification of the licensee Valleree E. Campbell as a franchisee of Southland. Notably, the license was not issued jointly to Campbell Valleree E *and* the Southland Corporation, defendant's proper name and the name in which it executed the application.

We conclude that Southland's status as a colicensee was not established as a matter of law and that plaintiffs' contention that a principal-agency relationship was established as a matter of law is wholly without merit.

*Erroneous Instruction: "Complete" Control v. "Substantial" Control*

On the issue of agency the trial court instructed the jury in the language of BAJI Instruction No. 13.20 with inconsequential modifications, informing the jury in part: "The most important factor in determining whether one is an agent or independent contractor is whether the principal has the right to control the manner and means of accomplishing the result desired. *If the principal has the authority to exercise complete control, whether or not that right is exercised with respect to all details, a principal-agent relationship exists.* [Strong evidence in support of a principal-agent relationship is the right to discharge at will, without cause.] [¶] Other factors to be taken into consideration in determining whether a person is an agent or independent contractor are: [7 factors were enumerated]."[4] (Italics added.)

---

[4]BAJI No. 13.20, as given to the jury, stated: "One of the issues which you must decide is whether, at the time of the events out of which the accident occurred, [Valleree Campbell] was the agent of defendant [Southland Corporation, or] whether at said time [Valleree Campbell] was an independent contractor.

"While both an agent and an independent contractor work for another person, there is an important distinction between them.

"One is the agent of another person, called the principal, if he is authorized to act for or in place of the principal and is subject to the right of the principal to control his actions.

"An independent contractor is one who, in rendering services, exercises an independent employment or occupation, and represents his employer only as to the results of his work, and not as to the means whereby it is to be accomplished.

"The most important factor in determining whether one is an agent or independent contractor is whether the principal has the right to control the manner and means of accomplishing the result desired. If the principal has the authority to exercise complete control, whether or not that right is exercised with respect to all details, a principal-agent relationship exists. [Strong evidence in support of a principal-agent relationship is the discharge at will, without cause.]

"Other factors to be taken into consideration in determining whether a person is an agent or independent contractor are:

Plaintiffs requested an instruction that would have altered the italicized language quoted above to inform the jury: "If, in practical effect, the franchisor has the right to exercise *substantial control over the operation of the franchisee, an agency relationship exists.* In such case, the franchisor is the principal and the franchisee is the agent."[5] (Italics added.)

Plaintiffs contend that by giving the instruction it did and refusing to give the requested instruction the court erroneously misinformed the jury that to find a principal-agency relationship it was required to find that Southland had the right to exercise complete control, whereas under the law all that is required is proof of the right to exercise substantial control. Not so.

■ BAJI Instruction No. 13.20 delivered by the court did not inform the jury that no principal-agency relationship could be found unless it was proved Southland had the right to exercise complete control. It informed the jury that if it were proved that Southland had the right to exercise complete control a principal-agency relationship existed as a matter of law but that otherwise the right to control was an important factor to be taken into consideration along with the seven other factors enumerated. That is a correct statement of the law. (E.g., *City of Los Angeles* v. *Vaughn* (1961) 55 Cal.2d 198, 201 [10 Cal.Rptr. 457, 358 P.2d 913]; *Nichols* v. *Arthur Murray, Inc., supra,* 248 Cal.App.2d 610, 613; see also *Societa per Azioni*

---

"(a) Whether or not the one performing services is engaged in a distinct occupation or business;

". . . . . . . . . . . . . . . . .

"(c) The skill required in the particular occupation or business;

"(d) Whether the [alleged] principal or the [alleged agent or alleged independent contractor] supplies the instrumentalities, [equipment] and the place of work for the person doing the work;

"(e) The length of time for which the services are to be performed;

"(f) The method of payment . . .;

"(g) Whether or not the work is part of the regular business of the alleged principal; and

"(h) Whether or not the parties believe they are creating a relationship of agency or independent contractor.

"[An independent contractor is at liberty to consider and follow any suggestions that his [alleged principal] may make, and his [alleged principal] may make any suggestions or requests prompted by his own wishes, but these things do not change the independent contractor into an agent so long as he retains the right of control over the methods to be used to accomplish the end result.]

"One who employs an independent contractor is not liable to others for the acts or omissions of the independent contractor."

[5]The requested instruction read in its entirety: "In determining whether an agency relationship exists between a franchisor and a franchisee under a franchise agreement, the right to control is an important factor. If, in practical effect, the franchisor has the right to exercise substantial control over the operation of the franchisee, an agency relationship exists. In such case, the franchisor is the principal and the franchisee is the agent. [¶] Declarations contained in the franchise agreement respecting the nature of the relationship created thereby are not controlling. Rather, the writings and actual operation must be considered as a whole."

*de Navigazione Italia* v. *City of Los Angeles* (1982) 31 Cal.3d 446, 458 [183 Cal.Rptr. 51, 645 P.2d 102]; *Tieberg* v. *Unemployment Ins. App. Bd.* (1970) 2 Cal.3d 943, 949 [88 Cal.Rptr. 175, 471 P.2d 975].)

The instruction requested by plaintiffs was incorrect; it would have erroneously informed the jury that proof of the franchisor's right to exercise "substantial control over the operation of the franchisee" would establish a principal-agency relationship as a matter of law, without regard to any of the other factors recognized as significant under the law. *Holland* v. *Nelson* (1970) 5 Cal.App.3d 308, 313 [85 Cal.Rptr. 117], and *Kuchta* v. *Allied Builders Corp., supra,* 21 Cal.App.3d 541, 547, the decisions cited by plaintiffs in support of their position, do not stand for the proposition that proof of the right to exercise substantial control establishes a principal-agency relationship as a matter of law. On the contrary, in both decisions determinations by the finder of fact that a principal-agency relationship existed as a matter of fact were affirmed on appeal because the alleged principal had the right to exercise substantial control. (21 Cal.App.3d at p. 547; 5 Cal.App.3d at p. 313.) Thus, the proposition these decisions stand for is that a factual finding of agency will be upheld on appeal when the evidence shows the alleged principal had the right to exercise substantial control.

A further problem with the instruction requested by plaintiffs was that it did not relate the right to control to the manner and means of accomplishing the result desired. It spoke of the right to control "the operation of the franchisee." ■ The right to control *the result* is inherent in both independent contractor relationships and principal-agency relationships; it is the right to control the means and manner in which the result is achieved that is significant in determining whether a principal-agency relationship exists. (*Tieberg* v. *Unemployment Ins. App. Bd., supra,* 2 Cal.3d 943, 950; *Mission Ins. Co.* v. *Workers' Comp. Appeals Bd.* (1981) 123 Cal.App.3d 211, 221-222 [176 Cal.Rptr. 439]; see also *White* v. *Uniroyal, Inc.* (1984) 155 Cal.App.3d 1, 25 [202 Cal.Rptr. 141].)

Plaintiffs also complain that the jury was not instructed, as proposed in the requested instruction (see fn. 5, *ante*), that the provisions in the franchise agreement purporting to establish the status of the parties were not necessarily controlling. Plaintiffs are correct that the provisions of franchise agreements are not necessarily controlling (*Nichols* v. *Arthur Murray, Inc., supra,* 248 Cal.App.2d 610, 613), however, no separate instruction on that point was requested by plaintiffs, and the instruction requested was, as previously explained, an incorrect statement of the law in two important respects. The court was therefore not required to give that instruction.

*The Nondelegable Duty Instruction*

■ Plaintiffs last contend that the trial court erred in refusing to instruct the jury that Southland Corporation owed a nondelegable duty of care to plaintiffs with respect to the sale of alcoholic beverages.[6] In the circumstances of this case we do not agree.

We start out by observing that the arguments contained in both plaintiffs' opening and reply briefs under this heading relate almost entirely to the court's failure to deliver an instruction that was not requested, an instruction on the duty of a person who has employed an independent contractor to do work likely to involve a "peculiar risk" of bodily harm to others unless special precautions are taken. (See, e.g., BAJI No. 13.21;[7] Rest.2d Torts, §§ 413, 416, 427; see also *Van Arsdale* v. *Hollinger* (1968) 68 Cal.2d 245, 250-252 [66 Cal.Rptr. 20, 437 P.2d 508]; *Snyder* v. *Southern Cal. Edison Co.* (1955) 44 Cal.2d 793, 799-801 [285 P.2d 912]; *White* v. *Uniroyal, Inc., supra,* 155 Cal.App.3d 1, 22-23.) Since no "peculiar risk" instruction was requested, the court's failure to give one is not at issue on appeal.

The instruction that was requested would have informed the jury that *a defendant who by statute,* such as Business and Professions Code sections 25602 and 25658, *"is under a duty to provide specified safeguards or precautions,* is subject to liability for harm legally caused to others by the omission of a (franchisee) (co-licensee) . . . who fails to provide such safeguards or precautions."* (Italics added; see fn. 6, *ante.*) The requested instruction was based on BAJI No. 13.22, an instruction related to but different from the "peculiar risk" instruction exemplified by BAJI No. 13.21.

---

[6]The refused instruction was based on BAJI No. 13.22 and provided as follows: "One who by statute, such as B & P § 25602, 25658; just read to you, is under a duty to provide specified safeguards or precautions, is subject to liability for harm legally caused to others by the omission of a (franchisee) (co-licensee) of defendant who fails to provide such safeguards or precautions.

"Thus, if you find that the (franchisee) (co-licensee) of defendant omitted to provide the specified safeguards or precautions and that such omission or failure was a legal cause of plaintiff's injury, you will find that defendant is subject to liability for plaintiff's injury unless defendant proves by a preponderance of the evidence that such omission or failure was not due to any negligence on the part of such (franchisee) (co-licensee)."

[7]BAJI No. 13.21 (1977 rev.) reads: "Ordinarily, one who employs an independent contractor is not liable for the acts or omissions of such contractor or its employees. However, one who employs an independent contractor to do work which the employer should recognize as likely to create during its progress a peculiar risk of bodily harm to others unless special precautions are taken, is subject to liability for bodily harm proximately caused to them by the failure of the contractor to exercise reasonable care to take such precautions, even though the employer has provided for such precautions in the contract or otherwise [unless the employer himself has taken reasonable precautions against such risk]."

(See fn. 7, *ante;* see also *Snyder* v. *Southern Cal. Edison Co., supra,* 44 Cal.2d 793, 799-801, quoting from Harper, Law of Torts (1933) § 292.)

Plaintiffs' theory in requesting this instruction was apparently that sections 25602 and 25658, subdivision (a), of the Business and Professions Code impose on a licensee a duty "to provide specified safeguards or precautions" in respect to the sale of alcoholic beverages to an intoxicated minor and that as a colicensee of the "off sale" beer and wine license, Southland had a nondelegable duty to exercise the specified safeguards or precautions. Whatever might be said in favor of the rendition of an instruction on nondelegable duty generally in a case such as this, there was no error in the court's declining to give the requested instruction in this instance.

First, insofar as it purported to relate to Southland as a franchisor as distinct from its asserted capacity as a colicensee, it is incorrect. There was no statutorily prescribed duty requiring Southland to provide specified safeguards or precautions as a franchisor. (Cf. *Williams* v. *Fairhaven Cemetery Assn.* (1959) 52 Cal.2d 135, 139-140 [338 P.2d 392].) Moreover, it is even doubtful that Business and Professions Code sections 25602 and 25658 impose on a colicensee a duty "to provide specified safeguards or precautions." At the time of the sale of the alcoholic beverages involved in this case section 25602 read: "Every person who sells, furnishes, gives, or causes to be sold, furnished, or given away, any alcoholic beverage to any habitual or common drunkard or to any obviously intoxicated person is guilty of a misdemeanor." Section 25658 read in pertinent part: "(a) Every person who sells, furnishes, gives, or causes to be sold, furnished, or given away, any alcoholic beverage to any person under the age of 21 years is guilty of a misdemeanor." The statutes prohibited the furnishing of alcoholic beverages to specified persons, including persons under the age of 21 years and intoxicated persons; however, they provided no "specified safeguards or precautions" to be exercised by the licensee in that regard.

Moreover, until the instruction was requested after all the evidence was in, neither plaintiffs' pleadings nor plaintiffs' theory of trial as disclosed in their opening statement or otherwise, included any theory of liability on the part of Southland based on nondelegable statutory duty. Plaintiffs' theory as disclosed in their fourth amended complaint on which the case went to trial, their opening statement and throughout the trial until the handwritten nondelegable duty instruction was requested, was that Valleree Campbell and her employees were the agents of Southland. To have permitted plaintiffs to so drastically change their theory of trial after all the evidence was in would have been entirely unfair to the defendant, and the trial court acted with propriety in declining to deliver the requested instruction. (See *Ernst* v. *Searle* (1933) 218 Cal. 233, 240 [22 P.2d 715]; 6 Witkin, Cal. Procedure

(2d ed. 1971) Appeal, § 281, pp. 4269-4270, and authorities there cited; cf. *White* v. *Uniroyal, Inc., supra,* 155 Cal.App.3d 1, 24.)

Finally, the way in which the requested instruction was framed assumed that Southland's status as a colicensee had been established by the evidence as a matter of law. As earlier explained, that is not so.

## Disposition

No error is demonstrated. The judgment is affirmed.

Morris, P. J., and McDaniel, J., concurred.