[No. B109410. Second Dist., Div. Two. Dec. 8, 1997.]

UNIVERSAL BANK, Plaintiff and Appellant, v.
LAWYERS TITLE INSURANCE CORPORATION et al., Defendants and
Respondents.

**COUNSEL**

Richard Shaffer, Nancy A. Lee, Alexander & Yong and Jeffery S. Yong for Plaintiff and Appellant.

Levinson, Lieberman & Maas, Burton S. Levinson and Lawrence R. Lieberman for Defendants and Respondents.

## OPINION

**BOREN, P. J.**—Appellant, Universal Bank, sued respondents, Lawyers Title Insurance Corporation and Land Title Insurance Company (collectively referred to as Lawyers Title), for, inter alia, breach of title company instructions, fraud and negligence based on the alleged misconduct during the escrow process of Lawyers Title's issuing agent, Southland Title. The trial court found Southland Title was only an agent for the purpose of issuing the title insurance policy and there was no evidence Lawyers Title allowed Southland Title to be an agent in any escrow capacity in this matter. The trial court thus granted summary judgment in favor of Lawyers Title. Universal Bank appeals. We affirm.

### FACTS

We review the record and determine this appeal in accordance with the customary rules of appellate review following a summary judgment. (*Brantley* v. *Pisaro* (1996) 42 Cal.App.4th 1591, 1594-1602 [50 Cal.Rptr.2d 431]; *AARTS Productions, Inc.* v. *Crocker National Bank* (1986) 179 Cal.App.3d 1061, 1064-1065 [225 Cal.Rptr. 203]; see Code Civ. Proc., § 437c, subd. (c).) This action arises from a loan made by Universal Bank to Abdelmotte Ghoneim in February of 1992. Universal Bank lent Ghoneim $1,338,750, with a promissory note secured by a purchase money deed of trust on certain real property. The appraisal relied on by Universal Bank indicated the fair market value of the property at the time of the loan was over $1.8 million.

Ghoneim's loan application submitted to Universal Bank indicated Ghoneim was to purchase the property from Hubbard Properties for $1,785,000. Pleasant Valley Escrow (also a defendant in this case) handled the conveyance of the property to Ghoneim. Southland Title played a dual role. First, it acted as the title company for the purposes of preparing a preliminary report and issuing a lender's policy of title insurance underwritten by Lawyers Title. Second, Southland Title acted as a sub-escrow for the transaction by providing services to Universal Bank, including recording documents and transmitting the loan proceeds and copies of deeds as instructed. Southland Title was compensated separate and apart from its share of the premium paid for the title insurance policy pursuant to instructions given to it by Universal Bank.

Universal Bank asserts that the transaction was a sham, that Southland Title failed to disclose a concurrent transfer of the property to a person other than the borrower, and that an individual named Boswell was used as a "straw man" fraudulently to induce Universal Bank to make the loan.

According to Universal Bank, as a part of this scheme Hubbard Properties sold the property to Boswell for just over $1.3 million. Almost simultaneously, the transaction from Boswell to Ghoneim occurred, with no cash going to Boswell. Phony escrow documents made it appear to Universal Bank that Ghoneim was receiving $400,000 from the sale of another property and that he was using that money for the down payment in the present transaction. Universal Bank claims that, in reality, Ghoneim was purchasing the property from Hubbard Properties, rather than Boswell, for a price that was approximately 100 percent of the amount of the secured loan.

Ghoneim subsequently defaulted under the terms of the promissory note and deed of trust, and Universal Bank thereafter foreclosed on the property. Universal Bank ultimately purchased the property at a foreclosure sale for $700,000, which was almost $1 million less than the value shown by the appraisal upon which it had relied. However, there was no evidence as to what extent Universal Bank's losses may have resulted from a loan secured by property which thereafter was detrimentally affected by the real estate market and dropped significantly in value.

According to Universal Bank, Lawyers Title represented to the public that it would reimburse any losses resulting from the failure of their issuing agents to follow a customer's written instructions, and that Lawyers Title should thus be liable for the actions of Southland Title. Specifically, Universal Bank asserts Southland Title breached its obligations under a document entitled, "Title Company Instructions," which Universal Bank interprets as requiring, before the close of escrow, that Southland Title provide Universal Bank with copies of any deeds to be recorded that would vest title in the property in anyone other than Ghoneim. Universal Bank alleges that Southland Title breached these instructions because it did not give Universal Bank copies of the deeds from Hubbard Properties to Boswell and from Boswell to Ghoneim. Universal Bank further argues if it had been advised of this double escrow, it would have uncovered the purported fraudulent scheme whereby Ghoneim was allowed to purchase the property without making the $400,000 down payment that Universal Bank thought he was making.

In granting summary judgment, the trial court ruled that Southland Title was only a limited agent for Lawyers Title, and that the undisputed facts could not lead to a finding of more extensive ostensible agency relationship.

## DISCUSSION

The contract between Universal Bank and Southland Title did require that Southland Title advise Universal Bank prior to recording documents of any deed on the subject property which would vest title in persons

other than the bank's borrower. Universal Bank thus appears to have intended to protect itself from the very type of fraud perpetrated upon it; i.e., a phony transaction with a straw man, inflating the true value of the property, and letting the ultimate purchaser buy the property with no money down. Nonetheless, Lawyers Title was not a party to the contract between Universal Bank and Southland Title and thus cannot be liable based on that contract.

Nor can any liability of Lawyers Title be premised on the notion that Southland Title acted as an agent for Lawyers Title *in the performance of escrow services.* ■ We acknowledge that the existence or extent of an agency relationship is a question of fact (see *Seneris* v. *Haas* (1955) 45 Cal.2d 811, 831 [291 P.2d 915, 53 A.L.R.2d 124]), and summary judgment is improper where triable issues of fact exist as to whether there is an agency. (*Preis* v. *American Indemnity Co.* (1990) 220 Cal.App.3d 752, 761-763 [269 Cal.Rptr. 617].) Nonetheless, summary judgment is appropriate where, as here, the evidence is undisputed and susceptible of but a single inference. (*Magnecomp Corp.* v. *Athene Co.* (1989) 209 Cal.App.3d 526, 536 [257 Cal.Rptr. 278].)

■ The actual agency relationship which did exist between Lawyers Title and Southland Title was not all inclusive and was delineated in the 1986 underwriting agreement. The unambiguous terms of the agreement specifically excluded from the scope of the agency sub-escrow activities, including "closings of real estate transactions." There is no indication this document was subsequently amended, for example, to expand the agency relationship to include any subagency activities of Southland Title. This document between the parties reveals their intent as to the nature of the agency relationship. (See *Wickham* v. *Southland Corp.* (1985) 168 Cal.App.3d 49, 56 [213 Cal.Rptr. 825].)

Equally unavailing is Universal Bank's reliance on the so-called "closing protection letter," by which Lawyers Title promised to reimburse its clients which requested such a form letter for any losses incurred in connection with the "[f]ailure of the Issuing Agent to comply with your written closing instructions." Universal Bank urges that this letter "suggests" that Lawyers Title understood the scope of their grant of agency authority to extend to escrow functions by issuing agents such as Southland Title. However, the letter was merely a form of indemnity agreement issued to its insured which provided that the insurance company would be responsible for loss caused by certain acts of the underwritten title company in connection with certain sub-escrow activities of the underwritten title company. Most significantly, Universal Bank could have requested such a closing protection letter, but it did not do so. It is thus inapplicable in the present case.

Nor did certain 1992 advertising brochures by Lawyers Title extend the scope of the agency relationship with the underwritten title companies. First, there was no evidence that anyone involved in this loan transaction at Universal Bank read the advertising or had it in mind when it was revealed that Lawyers Title was going to be the title insurance company involved in the transaction. Second, nothing in these marketing materials specifically asserted that an issuing agent would have the authority to perform sub-escrow functions. The marketing brochures simply proclaimed in general terms the extensive and thorough services provided by Lawyers Title. Universal Bank speculates from such advertising the existence of "a strong inference" of an actual agency for escrow services existed between Southland Title and Lawyers Title. But the opposition to summary judgment is insufficient when it is essentially based on conjecture and speculation. (See *Burton* v. *Security Pacific Nat. Bank* (1988) 197 Cal.App.3d 972, 978 [243 Cal.Rptr. 277].)

Universal Bank also contends that certain internal documents show Lawyers Title had extensive involvement with their issuing agents which indicates that the agency relationship included sub-escrow matters. Universal Bank points in particular to an agency operations manual which contained a section addressing escrow standards, certain underwriting bulletins issued by Lawyers Title to their agents regarding, in part, policies and procedures as to escrow matters, and a standard instruction letter from Lawyers Title to their agents which advised agents of American Land Title Association of guidelines for accurate accounting of business transactions, proper escrow procedures, and quality customer service. It is apparent that such items raise no triable issue of fact, but merely reflect the concern by Lawyers Title that its title company agents properly handle funds and trust deed payoffs, since the failure to do so could impact the insured title. Moreover, all but one of the bulletins and memoranda were sent after the close of the loan transaction in the present case.

Finally, there is also no triable issue of fact as to whether Southland Title was an ostensible agent of Lawyers Title based on a February 21, 1992, letter by Southland Title's title officer, Neil Viner. This letter was not addressed to Universal Bank but to Pleasant Valley Escrow and referenced the escrow number as to the title insurance policy which it reports it is prepared to issue. Universal Bank focuses on the last line of the letter, which stated: "The policies we issue are a joint form of Land Title Insurance Company and Lawyers Title Insurance Corporation." Universal also notes a cryptic reference at the top of the second page: "Agent: Southland." However, there was no indication in the letter that Southland Title was an agent for Lawyers Title, and the letter revealed nothing about the details of services that were going to be performed by Southland Title. Certainly,

conduct such as paying off deeds of trust on the property with a portion of the loan proceeds was not inconsistent with the limited agency of Southland Title. Southland Title's properly applying the loan proceeds so that title could be cleared as desired by Universal Bank did not make Southland Title an agent for all purposes. Nor did Universal Bank offer any evidence that it relied on the existence of a subescrow agency relationship between Lawyers Title and Southland Title, such as to establish ostensible authority to bind the principal by the acts of its agent. (See Civ. Code, § 2334; *Seneris* v. *Haas, supra,* 45 Cal.2d at p. 831.)

### DISPOSITION

The judgment is affirmed.

Fukuto, J., and Zebrowski, J., concurred.