[No. B107510. Second Dist., Div. Six. Nov. 26, 1997.]

LEON S. KAPLAN, Plaintiff and Appellant, v.
COLDWELL BANKER RESIDENTIAL AFFILIATES, INC., Defendant
and Respondent.

**COUNSEL**

Allan S. Morton for Plaintiff and Appellant.

England, Whitfield, Schroeder & Tredway and Robert A. McSorley for Defendant and Respondent.

**OPINION**

**YEGAN, J.**—In this action for real estate fraud, Leon S. Kaplan appeals from a summary judgment granted in favor of Coldwell Banker Residential Affiliates, Inc. (Coldwell Banker). (Code Civ. Proc., § 437c, subd. (c).) The trial court ruled there were no triable facts that would cause Coldwell Banker to be liable for the acts or omissions of a real estate broker who independently owned and operated a Coldwell Banker franchise. We conclude that a

triable issue of fact is present with respect to ostensible agency. We therefore reverse.

## Facts and Proceedings

Appellant purchased three parcels of agricultural property from Albert La Monte, Jr., and Helen La Monte for approximately $1 million. He later discovered that the property was not as represented. Appellant, a superior court judge, was an experienced investor and had employed real estate brokers in other transactions. Before purchasing the property, he had been involved in the purchase or sale of an office building, some storefront commercial property, five single-family residences, an apartment building, and commercial property.

Appellant filed suit against the La Montes and their real estate broker, Gerald Adams and Land Marketing Inc., for fraud, misrepresentation, and breach of fiduciary duty. He also sued his broker, Eric L. Marsh doing business as Coldwell Banker Citrus Valley Realtors, and salesperson, Philip Davidson, who assisted him in the transaction.

Coldwell Banker was named as a defendant on a respondeat superior theory. Appellant alleged that he ". . . placed great faith and trust in said defendants, and each of them, particularly because . . . [Marsh] was part of the Coldwell Banker organization which had an established reputation for honesty, integrity and expertise."

However, Marsh independently owned and operated his real estate office, Coldwell Banker Citrus Valley Realtors, a Coldwell Banker franchise. The franchise agreement required Marsh to hold himself out to the public as "an independently owned and operated member of Coldwell Banker Residential Affiliates, Inc." This disclaimer language was printed on Marsh's advertising but much smaller than that touting Coldwell Banker.[1]

Appellant testified that he "went for the sign," did not notice the disclaimer language, and trusted Coldwell Banker, a large reputable company with a national existence.

The first amended complaint alleged that "CBCVR [Marsh] is the franchisee of Coldwell Banker pursuant to an agreement whereby, inter alia, CBCVR may use the name Coldwell Banker, thereby benefiting from Coldwell Banker's goodwill and reputation for expertise and integrity in the field of real estate brokerage; further, Coldwell Banker receives compensation and has the right to and does exercise control over the conduct of CBCVR."

---

[1] We attach hereto as exhibit A page 21 of the Coldwell Banker Identity Manual.

Marsh and Davidson were dismissed after Marsh filed for bankruptcy. Appellant settled with the La Montes and the listing broker, Gerald Adams and Land Marketing, Inc.

Coldwell Banker, the sole remaining defendant, moved for summary judgment. (Code Civ. Proc., § 437c.) The evidence was undisputed that it did not control the day-to-day operation of Marsh's real estate office. Relying on *Cislaw* v. *Southland Corp.* (1992) 4 Cal.App.4th 1284 [6 Cal.Rptr.2d 386], the trial court granted the motion for summary judgment.

### Franchisor-Franchisee Relationship

■ Under the Franchise Investment Law, a franchise agreement confers the right to use a trade name, service mark, or logo pursuant to a marketing plan prescribed by the franchisor. (Corp. Code, § 31005, subd. (a)(1).) "[T]he franchisor's interest in the reputation of its entire [marketing] system allows it to exercise certain controls over the enterprise without running the risk of transforming its independent contractor franchise into an agent." (*Cislaw* v. *Southland Corp.*, *supra*, 4 Cal.App.4th 1284, 1292.)

In determining whether a true agency relationship exists between a franchisor and franchisee, the courts focus on the right to control. (*Wickham* v. *Southland Corp.* (1985) 168 Cal.App.3d 49, 59 [213 Cal.Rptr. 825]; *Nichols* v. *Arthur Murray, Inc.* (1967) 248 Cal.App.2d 610, 613 [56 Cal.Rptr. 728].) If the "franchise agreement gives the franchisor the right of complete or substantial control over the franchisee, an agency relationship exists. [Citation.] '[I]t is the right to control the *means and manner* in which the result is achieved that is significant in determining whether a principal-agency relationship exists.' [Citation]." (*Cislaw* v. *Southland Corp.*, *supra*, 4 Cal.App.4th 1284, 1288.)

### True Agency—Respondeat Superior

■ Appellant contends that the issue of a true agency relationship presents a question of fact and may not be decided by summary judgment. We disagree. The trial court correctly ruled there were no triable issues as to any material facts to hold Coldwell Banker liable on a respondeat superior theory for Marsh's activities. (See 2 Witkin, Summary of Cal. Law (9th ed. 1987) Agency and Employment, § 115, pp. 109-111.)

In *Cislaw*, a minor purchased clove cigarettes from a 7-Eleven store and died of respiratory failure. The parents filed suit against Southland Corporation (7-Eleven), the franchisor, based on the theory that the franchise

agreement created a principal-agent relationship. The trial court ruled that the store franchisees were independent contractors and granted summary judgment for Southland Corporation. The Court of Appeal affirmed, holding that a true principal-agency relationship exists only when the franchisor retains complete or substantial control over the daily activities of the franchisee's business. (*Cislaw* v. *Southland Corp., supra,* 4 Cal.App.4th at p. 1296.)

The same principle applies here. The fact that Coldwell Banker received a royalty based on Marsh's gross receipts did not create a true agency relationship. (*Cislaw* v. *Southland Corp., supra,* 4 Cal.App.4th at pp. 1297-1298.) If the law were otherwise, every franchisee who independently owned and operated a franchise would be the true agent or employee of the franchisor.

Here it was undisputed that Marsh independently owned and operated the franchise. Marsh hired and fired employees, set office wages and commissions, and determined his business hours. The franchise agreement recited that he was an independent contractor and that Coldwell Banker could only terminate for cause. This was an important factor in determining whether Marsh was an agent or an independent contractor. (*Cislaw* v. *Southland Corp., supra,* 4 Cal.App.4th at pp. 1294-1297.)

The franchise agreement further required that Marsh hold his real estate office out as an independently owned and operated business. Marsh testified that his business cards and office letterhead contained the standard disclosure: "Independently Owned and Operated Member of Coldwell Banker Residential Affiliates Incorporated." The Coldwell Banker logo did not appear on any of the real estate forms or transactional documents used by Marsh.

The declarations and deposition testimony indicated that Coldwell Banker did not control or have the right to control Marsh's business activities. Under the summary judgment statute, the burden shifted to appellant to produce triable facts of an agency relationship. (Code Civ. Proc., § 437c, subd. (o)(2); *Union Bank* v. *Superior Court* (1995) 31 Cal.App.4th 573, 592-593 [37 Cal.Rptr.2d 653].) Appellant produced no such evidence.

Marsh was the actual broker in the transaction, not Coldwell Banker. Marsh, not Coldwell Banker, owed appellant a fiduciary duty. Absent a showing that Coldwell Banker controlled or had the right to control the day-to-day operations of Marsh's office, it was not liable for Marsh's acts or omissions as a real estate broker on a true agency-respondeat superior theory. (E.g., *Cislaw* v. *Southland Corp., supra,* 4 Cal.App.4th 1284, 1290-1292; *Weiss* v. *Chevron, U.S.A., Inc.* (1988) 204 Cal.App.3d 1094, 1100 [251 Cal.Rptr. 727].)

## Ostensible Agency

The trial court erroneously rejected appellant's ostensible agency theory. Civil Code section 2300 provides: "An agency is ostensible when the principal intentionally, or by want of ordinary care, causes a third person to believe another to be his agent who is not really employed by him." (See also Civ. Code, § 2317.) Here, appellant tendered the issue of whether Coldwell Banker, by the want of ordinary care, could be responsible for Marsh's actions. (*Walsh* v. *American Trust Co.* (1935) 7 Cal.App.2d 654, 660 [47 P.2d 323].)

" 'It is elementary that there are three requirements necessary before recovery may be had against a principal for the act of an ostensible agent. The person dealing with the agent must do so with belief in the agent's authority and this belief must be a reasonable one; such belief must be generated by some act or neglect of the principal sought to be charged; and the third person in relying on the agent's apparent authority must not be guilty of negligence. [Citation.]' " (*Associated Creditors' Agency* v. *Davis* (1975) 13 Cal.3d 374, 399 [118 Cal.Rptr. 772, 530 P.2d 1084].)

The ostensible authority of an agent cannot be based solely upon the agent's conduct. (*Lindsay-Field* v. *Friendly* (1995) 36 Cal.App.4th 1728, 1734 [43 Cal.Rptr.2d 71].) "Liability of the principal for the acts of an ostensible agent rests on the doctrine of 'estoppel,' the essential elements of which are representations made by the principal, justifiable reliance by a third party, and a change of position from such reliance resulting in injury. [Citation.]" (*Preis* v. *American Indemnity Co.* (1990) 220 Cal.App.3d 752, 761 [269 Cal.Rptr. 617].)

Here Coldwell Banker made no specific representations to appellant personally. It did, however, make representations to the public in general, upon which appellant relied. We understand why appellant, and members of the public generally, might believe that Coldwell Banker "stood behind" Marsh's realty company. The venerable name, Coldwell Banker, the advertising campaign, the logo, and the use of the word "member" were and are designed to bring customers into Coldwell Banker franchises. As appellant stated at his deposition: Coldwell Banker's "outreach was successful. I believed they [Marsh and Davidson] were Coldwell Banker. They do a good job of that."

Appellant, a sophisticated real estate investor and superior court judge, did not notice the small print disclaimer language. Instead, he relied on the large print and believed that he was dealing with Coldwell Banker, i.e., that

Coldwell Banker "stood behind" Marsh. An ordinary reasonable person might also think that Marsh was an ostensible agent of Coldwell Banker. We obviously express no opinion on whether a trier of fact will so conclude or whether appellant was himself negligent. (*Associated Creditors' Agency* v. *Davis, supra,* 13 Cal.3d at p. 399.)

██ Whether ostensible agency exists ". . . is a question of fact . . . and may be implied from circumstances. [Citation.]" (*Yanchor* v. *Kagan* (1971) 22 Cal.App.3d 544, 550 [99 Cal.Rptr. 367]; see also *Walker* v. *Signal Companies, Inc.* (1978) 84 Cal.App.3d 982, 999 [149 Cal.Rptr. 119].) ██ For summary judgment purposes, it is sufficient to observe that a triable issue of material fact is present. Nothing in *Cislaw* v. *Southland Corp., supra,* 4 Cal.App.4th 1284, compels a contrary determination because that case did not present an issue of ostensible agency. (*Id.* at p. 1288.) Cases are not authority for an issue not considered in the court's opinion. (E.g., *People* v. *Heitzman* (1994) 9 Cal.4th 189, 209 [37 Cal.Rptr.2d 236, 886 P.2d 1229].)

Our holding is not a declaration that Coldwell Banker, or other large real estate franchise companies, are routinely fair game for any real estate transaction gone awry. However, where, as here, the plaintiff introduces some evidence raising a triable issue of fact on an ostensible agency theory, such is sufficient to withstand summary judgment.

The judgment is reversed. Each side to bear its own costs on appeal.

Stone (S. J.), P. J., and Coffee, J., concurred.

A petition for a rehearing was denied December 22, 1997, and respondent's petition for review by the Supreme Court was denied February 18, 1998.

APPENDIX

## EXTERIOR SIGNAGE
with U.S. Disclaimer