Filed 11/23/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| RAMON PEREDA, | B313718 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 19STCV23693) |
| v. | |
| ATOS JIU JITSU LLC et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Mark C. Kim, Judge. Affirmed.

Fraceschi Law, Decker Law, and James D. Decker for Plaintiff and Appellant.

Tyson & Mendes, Susan L. Oliver, Emily S. Berman, and JiEun Choi for Defendants and Respondents.

* * * * * *

A 49-year-old jiu-jitsu student injured during a sparring match sued the studio where he was taking lessons as well as the national jiu-jitsu association under whose auspices the studio's students could compete. The trial court granted summary judgment for the national association (as well as the association's founder) on the ground that the association was not liable for the student's injury because it had no actual control over the studio's sparring practices and the association's conduct did not give rise to a reasonable belief in the student that it had such control. The student appeals. His appeal raises two questions, one procedural and one substantive. First, did the trial court violate the student's right to due process by granting summary judgment on the issue of lack of control, when it was *the student* who first explicitly raised and briefed that issue in his opposition to summary judgment? Second, is the student's belief that the association had control over the studio's sparring practices "reasonable" by virtue of the franchise-type relationship between the association and studio? We conclude that the answer to both questions is "no," and accordingly affirm the grant of summary judgment.

## FACTS AND PROCEDURAL BACKGROUND

I.  **Facts**

A.  *Plaintiff*

In 2017, Ramon Pereda (plaintiff) was 49 years old. He was a former competitive bodybuilder who was familiar with sports that involved grappling: He was a wrestling celebrity at his high school; he kickboxed; he knew judo; and he had nearly achieved a brown belt in Taekwondo.

2

## B. *Plaintiff joins a local jiu-jitsu studio*

In the summer of 2017, plaintiff decided he wanted to learn Brazilian jiu-jitsu. A subset of jiu-jitsu generally, Brazilian jiu-jitsu is a sport in which competitors spar with one another on a mat and, through various grappling-type maneuvers, attempt to get one another into a chokehold; the match ends when the competitor who ends up in a chokehold submits, typically by "tapping out." As this description implies, "choking" is a "major" and "integral" part of Brazilian jiu-jitsu.

Plaintiff's neighbor told him about The Jiu Jitsu League (the League), which is a Brazilian jiu-jitsu studio where the neighbor was a part-time instructor. Plaintiff also visited a website for Atos Jiu Jitsu, LLC, which does business as Atos Jiu-Jitsu Association (Atos). Atos's website listed its various "affiliates," of which the League was one; clicking on the link for the League—which was identified on the website as "Atos Long Beach"—jumps to a separate website dedicated to the League.[1] Plaintiff then went to the League's studio in Signal Hill, California, three or four times over the course of a week to watch

_____

1 Although some of the information about the website appears to have come from the trial court's taking judicial notice of what the website provides after the court visited the website, the parties did not object to court's doing so (*Shuster v. BAC Home Loans Servicing, LP* (2012) 211 Cal.App.4th 505, 512, fn. 4 [failure to object to judicial notice in trial court forfeits challenge on appeal]) and the website's content—separate and apart from the truth of that content—is something "not reasonably subject to dispute and [is] capable of immediate and accurate determination by resort to sources of reasonably indisputable accuracy" (Evid. Code, § 452, subd. (h)).

the students sparring.  The League's studio had a banner indicating that it was affiliated with "Atos."

On July 18, 2017, plaintiff signed a membership agreement with the League.  The agreement contained no reference to Atos.

### C.    *Plaintiff is injured*

On August 15, 2017, plaintiff attended what was his tenth training session at the League's studio.  During the 30-minute portion of the session that involved sparring with other students, plaintiff sparred with Adam Nadow (Nadow), who was a purple belt.  This was not plaintiff's first time sparring with Nadow.  During their second spar that day, Nadow got plaintiff into a chokehold, and plaintiff considered tapping out, but was saved by the buzzer ending his match.  Afterward, plaintiff felt out of breath, had a limp, and experienced some confusion.

### D.    *The relationship between the League and Atos*

Atos was founded by Andre Galvao (Galvao), who is a world-renowned Brazilian jiu-jitsu champion.  Galvao founded Atos, which is "a collection of independent, individually owned and operated [Brazilian] jiu-jitsu studios throughout the nation." Galvao owns and operates his own studio in San Diego, California.  Kevin and Haley Howell (the Howells) independently own and operate a separate Atos-affiliated studio—the League— in the Long Beach area.  As an "affiliate" of the national Atos association, the League's students may compete in national Brazilian jiu-jitsu competitions as part of the Atos-brand team.  The League is also given Atos's teaching curriculum and its code of conduct, although the League is not required to implement either.  Otherwise, Galvao and Atos have no further control over the League or the Howells:  Neither Galvao nor Atos have any ownership interest in the League; neither employed the Howells;

and neither supervises the League's day-to-day operations, including the classes where the students spar. Galvao is not on the League's roster of instructors, but he teaches individual classes at studios around the world and thus has on a few occasions taught at the League as a "guest instructor"; Galvao has also presided over belt promotion ceremonies for the League's students.

## II.    Procedural Background

In July 2019, plaintiff sued the League, the Howells, and Nadow for negligence related to the injury he suffered during the August 2017 sparring session. After substituting Atos and Galvao for "Doe" defendants, plaintiff filed the operative first amended complaint. In that complaint, plaintiff alleges that the League's use of "the Atos name, . . . Atos logo and trade dress," as well as the Atos teaching curriculum renders Atos and Galvao liable for plaintiff's injury for "fail[ing] to adequately supervise or monitor" the League or the Howells' operation of the League.

Atos and Galvao (collectively, defendants) moved for summary judgment. In their moving papers, defendants sought summary judgment on two grounds—namely, that (1) plaintiff assumed the risk of a choking injury by voluntarily participating in jiu-jitsu classes, and (2) nothing defendants did "increased the risk" of injury to plaintiff (and hence plaintiff could not escape the assumption-of-risk bar).

In his opposition to the motion, plaintiff spent four pages of his briefing explicitly arguing that "Atos and Galvao are liable under the doctrine of ostensible authority."

In their reply, defendants briefly responded that the "doctrine of ostensible agency" did not "app[ly]" to them in order to render them liable for the "acts and/or omissions" of the

Howells and that the "doctrine . . . is completely irrelevant" to whether plaintiff assumed the risk of injury.

After a hearing, the trial court issued its ruling granting defendants summary judgment. The court started by noting that the papers raised three issues—namely, (1) did Nadow's chokehold increase the risk of injury to plaintiff in a way that exceeds the risk he assumed by participating in Brazilian jiu-jitsu, (2) were the Howells liable for Nadow's conduct in choking plaintiff, and (3) were Atos and Galvao liable to "the same extent as the Howells[] due to an ostensible agency relationship"? The court started with the third issue and found it to be dispositive. Specifically, the court found that the relationship between Atos and the League was "very similar to [an] ordinary franchise relationship"; that an "ordinary franchise relationship does not give rise to liability on the part of the franchisor for the acts of the franchisee unless the franchisor is involved in the specific acts that caused the plaintiff's injury"; and that Atos and Galvao were not involved in the specific acts of overseeing the League's training and sparring, which are what allegedly caused plaintiff's injury. Thus, the court found "no basis for imposing liability on Atos and/or Galvao on an ostensible agency theory."

Following the entry of judgment in defendants' favor, plaintiff filed this timely appeal.

## DISCUSSION

Plaintiff argues that the trial court erred in granting summary judgment because (1) he was denied due process when the court granted summary judgment on the ground that the League was not defendants' ostensible (or, by implication, actual) agent, and (2) the court's conclusion that the League was not defendants' ostensible agent was wrong on the merits, although

6

plaintiff concedes that the League was not defendants' *actual* agent. We independently review claims involving the denial of due process based on undisputed facts as well as challenges to the grant of summary judgment. (*People v. Seijas* (2005) 36 Cal.4th 291, 304 [constitutional questions where facts undisputed]; *Hampton v. County of San Diego* (2015) 62 Cal.4th 340, 347 [summary judgment].)

## I.  Due Process

As a general matter, a trial court hearing a summary judgment motion is only *obligated* to consider the grounds for summary judgment that are "identified in the moving papers." (*Juge v. County of Sacramento* (1993) 12 Cal.App.4th 59, 67-68 (*Juge*).) A trial court nevertheless has the *discretion* to consider other grounds for summary judgment if (1) the evidentiary basis for those grounds otherwise appears in the record presented with the moving papers (*id.* at pp. 68-69; *Y.K.A. Industries, Inc. v. Redevelopment Agency of City of San Jose* (2009) 174 Cal.App.4th 339, 366), *and* (2) doing so does not deny the opposing party due process because that party "'has notice of and an opportunity to respond to th[ose] ground[s]'" (*Noe v. Superior Court* (2015) 237 Cal.App.4th 316, 335-336; *Bacon v. Southern California Edison Co.* (1997) 53 Cal.App.4th 854, 860 (*Bacon*); *Kramer v. State Farm Fire & Casualty Co.* (1999) 76 Cal.App.4th 332, 335); see generally *Today's Fresh Start, Inc. v. Los Angeles County Office of Education* (2013) 57 Cal.4th 197, 212 ["'The essence of due process is the requirement that "a person in jeopardy of serious loss [be given] notice of the case against him and opportunity to meet it."'"].)

The trial court had the discretion to consider the ostensible agency issue in this case. To begin, the evidence supporting a

7

finding that the League was not defendants' ostensible agent was included in the evidence accompanying defendants' motion, including Galvao's disclaimer of any authority over the League, the nature of Atos's relationship with the League, and plaintiff's examination of the Atos's website.  Moreover, plaintiff was not denied notice or the opportunity to be heard on the issue of ostensible agency because he explicitly raised, and affirmatively and extensively briefed, the issue in his opposition.  (Accord, *Bacon, supra*, 53 Cal.App.4th at p. 860 [no due process violation when party raised issue in opposition to summary judgment]; cf. *Luebke v. Automobile Club of Southern California* (2020) 59 Cal.App.5th 694, 704 [due process violation where party's opposition only briefly touches on the issue]; *Cordova v. 21st Century Ins. Co.* (2005) 129 Cal.App.4th 89, 109-110 [due process is denied when sole opportunity to address issue is in motion for reconsideration, which limits the range of issues that can be raised].)  Plaintiff undoubtedly did so because the issue of control was raised—albeit "obliquely"—in defendants' moving papers (*Juge, supra*, 12 Cal.App.4th at p. 71):  The argument defendants raised for purposes of the assumption of risk doctrine that they lacked the authority to increase the risk to plaintiff necessarily encompassed the argument that defendants lacked control over the League's conduct attendant to increasing that risk.

Plaintiff argues that he had *additional* evidence he wanted to present on the issue of ostensible agency that he did not include with his opposition.  We reject this argument.  For starters, due process guarantees an opportunity to be heard—not multiple opportunities to be heard.  (*Dami v. Department of Alcoholic Beverage Control* (1959) 176 Cal.App.2d 144, 151 ["Due process insists upon the opportunity for a fair trial, not a

8

multiplicity of such opportunities."].)  Thus, in marshaling evidence in support of his argument in opposition to the summary judgment motion that defendants were liable under a theory that the League was their ostensible agent, it was *plaintiff*'s responsibility to pull all of that evidence together *at that time*; due process does not entitle him to a Mulligan.  What is more, the trial court *did* allow plaintiff at the hearing to supplement the summary judgment record with additional evidence, and plaintiff does not argue on appeal that any *further* additional evidence should have been admitted.

In sum, plaintiff was not denied due process.

## II.     Merits of Summary Judgment

### A.     *Pertinent law*

#### 1.     *The law of summary judgment*

Summary judgment is appropriate, and the moving party (typically, the defendant) is entitled to judgment as a matter of law, where (1) the defendant carries its initial burden of showing either the nonexistence of one or more elements of the plaintiff's claim or the existence of an affirmative defense, and (2) the plaintiff thereafter fails to show the "existence of a triable issue of material fact" as to those elements or affirmative defense. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850, 853 (*Aguilar*); *Huynh v. Ingersoll-Rand* (1993) 16 Cal.App.4th 825, 830; *Bacon*, *supra*, 53 Cal.App.4th at p. 858; Code Civ. Proc., § 437c, subds. (a), (c), (o)(1) & (2), (p)(2).)  In evaluating whether these standards for granting summary judgment have been satisfied, we consider all the evidence before the trial court except evidence to which an objection was made and sustained (*Hartford Casualty Ins. Co. v. Swift Distribution, Inc.* (2014) 59 Cal.4th 277, 286), liberally construe that evidence in support of the party

9

opposing summary judgment, and resolve all doubts concerning that evidence in favor of that party (*ibid.*; *Miller v. Bechtel Corp.* (1983) 33 Cal.3d 868, 874; Code Civ. Proc., § 437c, subd. (c)).

2. *The law of agency*

Plaintiff's sole claim is for negligence. To prevail on a claim of negligence, a plaintiff must prove (1) the existence of a duty of care, (2) breach of that duty, (3) proximate cause linking the breach to the plaintiff's injury, and (4) damages resulting from that breach. (*Brown v. USA Taekwondo* (2021) 11 Cal.5th 204, 213 (*Brown*).) There is also a fifth element—namely, that the person the plaintiff is suing (that is, the defendant) is legally responsible for this negligence. A defendant is *directly* liable for "his own negligence," but may also be *vicariously* liable for "someone else's negligence." (*Musgrove v. Silver* (2022) 82 Cal.App.5th 694, 705, italics omitted.)

As pertinent to this case, a person is liable for the torts committed by her agent within the scope of the agency. (*Perkins v. Blauth* (1912) 163 Cal. 782, 787; *Peredia v. HR Mobile Services, Inc.* (2018) 25 Cal.App.5th 680, 691-692.) There are two types of agency—actual and ostensible. Actual agency is based on *consent*, and turns on whether the principal has the right to control the agent's conduct. (*Edwards v. Freeman* (1949) 34 Cal.2d 589, 592 (*Edwards*); *Malloy v. Fong* (1951) 37 Cal.2d 356, 370.) Ostensible agency is based on *appearances*, and turns on whether the "the principal intentionally, or by want of ordinary care, causes a third person to believe another to be his agent" even though the third person is not *actually* an agent. (Civ. Code, § 2300; see also *id.*, § 2317; *Valentine v. Plum Healthcare Group, LLC* (2019) 37 Cal.App.5th 1076, 1086 (*Valentine*).)

10

A defendant may be held liable as a "principal" for the acts of the defendant's ostensible agent (that is, the third party who is not actually his agent) only if (1) the plaintiff, when dealing with the agent, did so "with [a reasonable] belief in the agent's authority," (2) that "belief [was] generated by some act or neglect by the principal," and (3) the plaintiff was not negligent in relying on the agent's apparent authority.  (*Associated Creditors' Agency v. Davis* (1975) 13 Cal.3d 374, 399; *Hartong v. Partake, Inc.* (1968) 266 Cal.App.2d 942, 960.)  Because a principal's liability for the acts of an ostensible agent rests on the notion that the principal should be estopped from creating the false impression of agency (*Patterson v. Domino's Pizza, LLC* (2014) 60 Cal.4th 474, 494, fn. 18 (*Patterson*)), the appearance of agency "must be based on the acts or declarations *of the principal* and not solely upon the agent's conduct."  (*Emery v. Visa International Services Assn.* (2002) 95 Cal.App.4th 952, 961 (*Emery*); *Kaplan v. Coldwell Banker Residential Affiliates, Inc.* (1997) 59 Cal.App.4th 741, 747 (*Kaplan*.)

3. *The law of franchises*

A franchise is a business relationship through which one entity (the "franchisor") sells a second entity (the "franchisee") the "right to use [the franchisor's] trademark and comprehensive business plan."  (*Patterson, supra*, 60 Cal.4th at pp. 477, 489; see also Corp. Code, § 31005, subd. (a).)  The franchisee "sells good[s or services] under the franchisor's name" and benefits from the universal standard of the franchisor, but retains autonomy when "implement[ing] the operational standards on a day-to-day basis" and otherwise "independently owns, runs, and staffs" itself.  (*Patterson*, at pp. 477, 489-490.)  "The goal—which benefits both parties to the [franchise] contract—is to build and keep customer

11

trust by ensuring consistency and uniformity in the quality of goods and services . . . ." (*Id.* at p. 490; *People v. JTH Tax, Inc.* (2013) 212 Cal.App.4th 1219, 1242-1243 (*JTH Tax*).)

        4.     *The intersection of agency law and franchise law*

"The law is clear that a franchisee may be deemed to be an agent of the franchisor." (*Kuchta v. Allied Builders Corp.* (1971) 21 Cal.App.3d 541, 547 (*Kuchta*).) Where, for instance, a business labeled as a "franchisor" nevertheless retains "the right of complete or substantial control over the franchisee" or is reasonably perceived as having that right, then the business labeled as the "franchisee" may be deemed to be the actual or ostensible agent of the "franchisor." (*Cislaw v. Southland Corp.* (1992) 4 Cal.App.4th 1284, 1288 (*Cislaw*); *Patterson*, *supra*, 60 Cal.4th at pp. 497-498; see *Kuchta*, at pp. 547-548 [franchisee is actual and ostensible agent of franchisor when franchisor used the exact same business name, when franchisor and franchisee had mixed finances, when franchisor had control over the location of the franchisee's business, over the materials the franchisee used, and over the franchisee's power to approve construction designs it would be building].)

But what if the two businesses have a bona fide franchisor relationship as described above, rather than one in name only? Because, in such a relationship, the franchisor by definition controls the franchisee's use of the franchisor's trademark and business plan, a finding of actual or ostensible agency based on that type of control *alone* would effectively render franchisees the agents of franchisors in every case, thereby "disrupt[ing]" and "turn[ing] . . . 'on its head'" one of the key aspects of the franchise business format—the ability of the franchisor to share its

12

goodwill with its franchisees without assuming all responsibility for how they operate their otherwise independent businesses. (*Patterson*, *supra*, 60 Cal.4th at pp. 497-498, 499 [franchisor's "control" over its "comprehensive operating system alone"—that is, its business model—is insufficient to create agency].)

To avoid this result, courts must be "mindful" when "applying agency theory in the context of a franchisor-franchisee relationship." (*JTH Tax*, *supra*, 212 Cal.App.4th at p. 1242.) Thus, a franchisor is liable for the conduct of the franchisee only if the franchisor actually exercises control—or is reasonably believed to exercise control—over the "means and manner" of the franchisee's operation that caused the plaintiff's alleged injury. (*Patterson*, *supra*, 60 Cal.4th at 478, 498; *Cislaw*, *supra*, 4 Cal.App.4th at p. 1288; *Kaplan*, *supra*, 59 Cal.App.4th at p. 745; *Wickham v. Southland Corp.* (1985) 168 Cal.App.3d 49, 59 (*Wickham*).)

To avoid having the doctrine of ostensible agency swallow up this carefully balanced principle, courts have limited what can give rise to a reasonable belief that a franchisor is controlling the portion of the franchisee's operation that caused the plaintiff's alleged injury. It is not enough to show that the franchisor and franchisee have "some relationship." (*J.L. v. Children's Institute, Inc.* (2009) 177 Cal.App.4th 388, 406.) It is not enough to show that the franchisor has allowed the franchisee to use its trade name and good will (*Cislaw*, *supra*, 4 Cal.App.4th at p. 1288; *Beck v. Arthur Murray, Inc.* (1966) 245 Cal.App.2d 976, 981 (*Beck*) ["the mere licensing of trade names does not create agency relationship either ostensible or actual"]), or, relatedly, that the franchisor's name appears on some of the materials used by the franchisee (*Taylor v. Financial Casualty & Surety, Inc.* (2021) 67

13

Cal.App.5th 966, 999; *Emery*, *supra*, 95 Cal.App.4th at pp. 961-962). But in a case alleging fraud, it is reasonable for a plaintiff to believe that the franchisee is the ostensible agent of the franchisor when the franchisor's affirmative "advertising campaign" to the public conveyed that it "stood behind" all of its franchisees. (*Kaplan*, *supra*, 59 Cal.App.4th at pp. 747-748.) And in a case alleging violations of an administrative statute, it is reasonable for a plaintiff to believe that the licensee is the ostensible agent of the licensor when the licensor was supervising the licensee's operations closely enough to know that the licensee was violating the statute and did nothing to stop those violations. (*Beck*, at pp. 977-981.)

### B. *Analysis*

Whether defendants are liable for the League's failure to properly supervise the sparring that gave rise to plaintiff's injury turns on whether the League is their agent. As noted above, plaintiff concedes that there is no triable issue of material fact when it comes to whether defendants had *actual* control over the League's supervision of its students, and hence no triable issue of material fact as to actual agency.[2] (*Edwards*, *supra*, 34 Cal.2d at

---

[2] For the first time on appeal, plaintiff argues that defendants may be liable because they have a "special relationship" to him that obligated them to protect him from Nadow. We reject this argument for two reasons. First, plaintiff forfeited this argument by not raising it in the trial court until the hearing on the summary judgment motion. (*Gallo v. Wood Ranch USA, Inc.* (2022) 81 Cal.App.5th 621, 646.) Although plaintiff cites the 2021 decision in *Brown* in support of this argument and that decision was issued only three weeks before summary judgment hearing, several decisions prior to *Brown* rest on the same principles (e.g., *Regents of Univ. of California v.*

p. 592.)  This is why defendants and the League have a relationship akin to a franchise, as plaintiff himself acknowledged when he repeatedly characterized that relationship as franchise-like.  Thus, defendants' liability turns on whether the League was their ostensible agent, which turns on whether plaintiff's belief that Atos controlled the League's oversight of sparring—which was the "means and manner" of the League's operations giving rise to plaintiff's injury—was a reasonable belief.  (*Cislaw*, *supra*, 4 Cal.App.4th at p. 1288; *Kaplan*, *supra*, 59 Cal.App.4th at p. 745.)  Because this case comes to us on appeal from the grant of summary judgment, the propriety of the trial court's ruling turns more broadly on whether there is a triable issue of material fact regarding ostensible agency and turns more narrowly on whether there is a triable issue of

---

*Superior Court* (2018) 4 Cal.5th 607 (*Regents*)), and thus give plaintiff no excuse for delaying to raise this argument.  Second, this theory lacks merit.  The sine qua non of a special relationship—whether it is one that obligates the defendant to protect the victim or to control the third party who harms the victim—is the defendant's *control* over the third party.  (*Regents*, at pp. 620-621; *Colonial Van & Storage, Inc. v. Superior Court* (2022) 76 Cal.App.5th 487, 500; *Doe v. Roman Catholic Archbishop of Los Angeles* (2021) 70 Cal.App.5th 657, 670.)  Because there is no triable issue of material fact that defendants had any actual control over the League's oversight of sparring, defendants can have no special relationship with plaintiff (or, for that matter, with the League) that can give rise to liability.  Although *Brown* has a passing resemblance to this case insofar as it has a sports organization as a defendant, it is otherwise off point because the plaintiffs in *Brown* were minors sexually molested by the coaches whom the defendant-organization had hired and thus over whom the defendant-organization had control.  (*Brown*, at p. 210.)

15

material fact regarding the reasonableness of plaintiff's belief. (*Aguilar*, *supra*, 25 Cal.4th at pp. 850, 853.) Although the broader question of whether one entity is the ostensible agent of another is typically a question of fact for the jury (*Kaplan*, at p. 748), it may be decided as a matter of law on summary judgment where neither the evidence nor inferences are in conflict (*Taylor*, *supra*, 67 Cal.App.5th at pp. 993-994; *Valentine*, *supra*, 37 Cal.App.5th at p. 1086; *Wickham*, *supra*, 168 Cal.App.3d at p. 55). The narrower question of whether a plaintiff's belief is reasonable is a question of law. (*Markow v. Rosner* (2016) 3 Cal.App.5th 1027, 1045 [whether plaintiff's belief that one entity was another's ostensible agent "was reasonable" "is a question of law"].)

Because ostensible agency focuses on what a reasonable person knowing what the plaintiff knew would have believed, we necessarily focus on what the plaintiff knew *at the time of his injury*. (See, e.g., *A.C. Label Co. v. Transamerica Ins. Co.* (1996) 48 Cal.App.4th 1188, 1194.) Knowledge a plaintiff acquires *after* the injury, including during postinjury litigation, cannot contribute to the reasonableness of the plaintiff's belief about the defendant's control over its ostensible agent at the time of the injury. As a consequence, we give no weight to the facts plaintiff did not know about at the time he was injured by Nadow while sparring—namely, that Galvao sometimes was a guest teacher and sometimes participated in commencement activities, and that the League was permitted to use Atos's teaching curriculum.

The information plaintiff knew at the time of his injury does not, as a matter of law, give rise to a reasonable belief that defendants had control over the League's supervision of sparring during its classes. The League's display of Atos's banner in its

16

studio is not enough because, as noted above, the mere use of a "trade name" is insufficient to "create" even an "ostensible" "agency relationship[]." (*Beck*, *supra*, 245 Cal.App.2d at p. 981; *Cislaw*, *supra,* 4 Cal.App.4th at p. 1288; *Emery*, *supra*, 95 Cal.App.4th at pp. 961-962.) The content of Atos's website is also not enough.[3] That website espoused the safety of Brazilian jiu-jitsu, listed the League as one of its "affiliates" and as "Atos Long Beach," and set forth a link to a different website for the League. But this terminology and the use of the Atos trade name does not create a reasonable belief that defendants controlled the day-to-day operations of the League, or, more to the point, supervised the League's sparring activities. Plaintiff points to the fact that neither defendants nor the League *affirmatively disclaimed* Atos's control over League by explicitly stating that the League was "independently owned and operated," but the absence of such a disclaimer does not convert an unreasonable belief of ostensible agency into a reasonable one.

Plaintiff resists this conclusion with three arguments.

First, plaintiff points to the declaration he filed in opposition to summary judgment, in which he states that (1)

---

[3] The trial court excluded plaintiff's statements in his declaration regarding his review of the website and the inferences he drew from that review, but the court nevertheless went on to analyze those statements for purposes of the reasonableness of plaintiff's belief. Plaintiff attacks the trial court's evidentiary ruling, but does so on only one of the possible grounds for upholding that ruling. Plaintiff's failure to attack every ground constitutes a waiver. (*Salas v. Department of Transportation* (2011) 198 Cal.App.4th 1058, 1074.) For purposes of our analysis, however, we have nevertheless overlooked this waiver and considered this evidence as well.

Atos's "website gave . . . the impression that ATOS . . . owned and operated several jiu-jitsu schools throughout the country," (2) the website prompted him to "assume[]" the League was "a franchise[-]type school under the control and supervision of ATOS and . . . Galvao," and (3) the "website implicitly suggest[s] that all of the ATOS schools meet the ATOS standard for safety and quality of instruction." These statements are entitled to no weight. (*Taylor*, *supra*, 67 Cal.App.5th at p. 993-994 [plaintiff's "'"subjective beliefs . . . do not create a genuine issue of fact; nor do uncorroborated and self-serving declarations"'"]; *Pryor v. Industrial Accident Commission* (1921) 186 Cal. 169, 172 [plaintiff's statements regarding their status are "mere legal conclusions and of no weight"]; see also *Kuchta*, *supra*, 21 Cal.App.3d at p. 548 [parties' declaration as to nature of relationship not dispositive]; *Patterson*, *supra*, 60 Cal.4th at p. 501 [same].) For the same reasons, Galvao's disavowal during a deposition that his Atos empire was a franchised business—which plaintiff proffered at the hearing on the summary judgment motion—is also entitled to no weight and is in any event not a judicial admission that binds this court.

Second, plaintiff argues that his case is on all fours with *Kaplan*, *supra*, 59 Cal.App.4th 741, and, to a lesser extent another case we have found, *Beck*, *supra*, 245 Cal.App.2d at pp. 977-978. We disagree. *Kaplan* is distinguishable. In that case, the franchisor made "representations to the public in general," as part of an affirmative "advertising campaign," conveying that it "stood behind" all of its franchisees; this raised triable issues of material fact regarding whether it was reasonable for the plaintiff suing for fraud to believe that the franchisor was vicariously liable for its franchisee's representations. (*Id.* at pp.

18

747-748.)  Here, Atos did not have an affirmative advertising campaign and, more to the point, did not do or say anything to give rise to a reasonable belief that Atos was in control of the League's sparring sessions—beyond lending the use of its name, which, as noted above, is legally insufficient to create a reasonable belief that would support a finding of ostensible agency.  Read narrowly, *Beck* is also distinguishable because the licensor in that case was closely associated enough with its independently owned and operated licensee that it knew of the licensee's violations of the so-called "Dance Act" but did nothing to remedy those violations; in a lawsuit based on the Dance Act, *Beck* deemed the licensee to be the licensor's ostensible agent. (*Beck*, at pp. 978-981.)  Here, Atos did nothing to give rise to a reasonable belief that it was controlling the League's sparring activities, which is all that is relevant to plaintiff's lawsuit.  To be sure, *Beck* could be read more broadly for the proposition that the use of a franchisor's trade name—even with a disclaimer—is sufficient to give rise to a finding of ostensible agency.  But we decline to read *Beck* in that manner because doing so would be impossible to reconcile with our Supreme Court's decision in *Patterson* protecting the franchise relationship from erosion by overbroad application of agency principles.

Third, plaintiff argues that there must be issues of material fact in dispute because plaintiff disputed 54 out of the 63 material facts listed in defendants' separate statement.  But the fact that plaintiff disputes the vast majority of facts does *not* mean that any of those facts is material to the issue upon which summary judgment was ultimately granted.  Here, we have concluded they are not.

* * *

19

In light of our conclusion, we have no occasion to reach defendants' argument that the judgment may be alternatively affirmed based on the primary assumption of risk doctrine.

## DISPOSITION

The judgment is affirmed.  Defendants are entitled to their costs on appeal.

**<u>CERTIFIED FOR PUBLICATION</u>.**


_____, J.
HOFFSTADT

We concur:


_____, P. J.
LUI


_____, J.*
BENKE

---

*        Retired Associate Justice of the Court of Appeal, Fourth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.